7983

McKAIN v. CAMDEN WATER, LIGHT AND ICE CO.

1. PLEADINGS—NEGLIGENCE.—Where the act of negligence alleged was the failure to properly guard a dangerous wheel evidence of other defects in or about the wheel is not competent.

2. EXCEPTIONS.—An objection not stating grounds is not well taken.

3. MASTER AND SERVANT—SAFE PLACE.—It is the duty of the master to furnish a *reasonably safe place*.

4. NEGLIGENCE—PROXIMATE CAUSE.—Illustration of negligence by leaving a horse unhitched, held not to define proximate cause.

5. MASTER AND SERVANT—ASSUMPTION OF RISKS.—Charge construed as a whole held to mean if a servant of ordinary care and prudence under all the circumstances would undertake to operate machinery with knowledge of the risks, there is no assumption of risks.

6. NEGLIGENCE.—Those having physical disabilities must be more careful than others in going where they may encounter danger.

7. WAIVER—ASSUMPTION OF RISKS.—Request to charge what would tend to rebut waiver of defect by servant remaining in employment after promise to repair *held* defective in that it undertook to say what force and effect should be given to certain facts.

Before DEVORE, J., Kershaw, July term, 1910. Affirmed.

Action by Nannie M. McKain, administratrix of Richard N. McKain, against Camden Water, Light & Ice Company. Plaintiff appeals on the following exceptions:

1. "In refusing to allow the question: 'Was that protected?' alluding to crank which came within two inches of a guard surrounding fly wheel—the error of law being found: (a) In refusing to allow witness to testify as to an allegation of negligence, the unguarded condition of fly wheel, it being for the jury to determine whether the protection of the crank would not also have been a protection of the fly wheel, whether or not one could be protected without the other; (b) In refusing to allow testimony as to the conditions or surrounding circumstances of the alleged unsafe place where plaintiff's intestate met his death, because of an unprotected and unguarded fly wheel.

2. "In allowing and permitting the witness Boynton over plaintiff's objection to testify as to the terms of a verbal contract between the defendant and the Camden Oil Mill whose machinery defendant was using when plaintiff was killed. The error of law being found: (a) In allowing testimony as to irrelevant matter calculated to mislead the jury from one of the true issues in this case, whether or not defendant furnished plaintiff's intestate with a reasonably safe place to work; (b) In allowing testimony tending to show that the unsafe place was furnished defendant by the Southern Oil Mill under terms and conditions which prohibited or excused defendant from making any changes, thereby injecting into the case a foreign issue calculated to mislead, and which could in no way excuse defendant for

not performing its legal duty—to furnish plaintiff with a reasonably safe place to work.

3. "In allowing and permitting the witness Eve over plaintiff's objection to testify as to the terms of a verbal contract between the defendant and the Camden Oil Mill whose machinery defendant was using when plaintiff was killed. The error of law being found: (a) In allowing testimony as to irrelevant matter calculated to mislead the jury from one of the true issues of this case, whether or not defendant furnished plaintiff's intestate with a reasonably safe place to work; (b) In allowing testimony tending to show that the unsafe place was furnished defendant by the Southern Oil Mill under terms and conditions which prohibited or excused defendant from making any changes, thereby injecting into the case a foreign issue calculated to mislead, and which could in no way excuse defendant for not performing its legal duty—to furnish plaintiff with a reasonably safe place to work; (c) In allowing testimony of terms of contract which witness testifying did not inform plaintiff's intestate of, or know of his own knowledge that plaintiff's intestate derived such information from any other source, the only effect of which could be to bolster up the witness Boynton's testimony—to show that he was telling the truth about an irrelevant and undisputed fact.

4. "In charging without qualification: 'And it is the duty of the master to furnish not an absolutely safe place for the servant to work in but a reasonably safe place.' The error of law being found: (a) In charging in effect that if a man of ordinary care and prudence under all the circumstances would furnish an absolutely safe place to work in, it would not be negligence to leave undone what said man of ordinary care and prudence would have done.

5. "In charging 'I might be negligent in leaving my horse hitched to the buggy out here, without tying him, and if that horse did anybody any injury I would not be liable.' The error of law being found in erroneously defining the

proximate cause. If I negligently cease to control a dangerous and unreasoning instrumentality which belongs to me, in a public place, and damage ensues to some one as a direct consequence of my negligence, I am liable.

6. "In charging that 'If the master furnishes a place and it is defective to such an extent that a man of ordinary prudence, care and reason can see for himself that it is defective, knows the danger, and after knowing that he undertakes to operate, why he assumes that risk. I say that he assumes it although the master directs him to go and perform that work.' The error of law being found in making knowledge of the danger on the servant's part the sole criterion of his negligence, or assumption of risk, whereas the correct legal principle is that if a person of ordinary care and prudence under all the circumstances, would undertake to operate with knowledge, such person does not assume the risk.

7. "In charging 'It might not be negligence for me to undertake to jump over that gate out there, but if I had one leg, it might be negligence for me to undertake to do it.' The same being a thinly veiled charge upon the facts, it being in evidence that plaintiff's intestate only had one leg when he was killed.

8. "In not charging the 7th request to charge of plaintiff, viz.: 'A promise by master to remedy a defect after notice or protest, tends to rebut the inference of waiver of the defect by the servant's remaining in the master's service after knowledge. If the servant continued in discharge of his duties, relying on the master's promise to remove a defect, he could not be said to have waived such defect. The jury is the proper tribunal to determine this question in the case.' Whereas it is submitted that the request stated a correct proposition of law applicable to the facts in this case, it being in evidence that plaintiff's intestate protested to defendant about the unsafe place where he met his death, and defendant promised to remedy the defect."

*Messrs. Clark & von Tresckow,* for appellant, cite: *As to assumption of risks:* 87 S. C. 213; 82 S. C. 149; 97 Am. St. R. 877. *Remaining in service after promise to repair:* 53 S. C. 363. *Charge on facts:* 79 S. C. 97; 40 L. R. A. 781; 73 S. C. 236.

*Messrs. Shannon & Mills, T. J. Kirkland, M. L. Smith* and *E. D. Blakeney,* contra. *Mr. Smith* cites: *Objection must be made to testimony before it is admitted:* 53 S. C. 360. *Testimony responsive to allegations in the complaint is competent:* 60 S. C. 381; 61 S. C. 329, 456; 66 S. C. 69; 70 S. C. 8; 78 S. C. 485. *Kind of place master must furnish:* 70 S. C. 440; 71 S. C. 58; 72 S. C. 97, 411; 76 S. C. 284; 75 S. C. 303; 69 S. C. 109. *Request refused was on the facts:* 61 S. C. 563; 47 S. C. 523.

July 24, 1911. The opinion of the Court was delivered by

·  Mr. Justice Gary. This is an action for damages, alleged to have been sustained on account of the wrongful acts of the defendant, causing the death of plaintiff's intestate.

The allegations of the complaint, material to the questions involved, are are follows:

"That on or about the 30th day of July, A. D. 1906, and some time prior thereto, the plaintiff's intestate was engaged as a servant and employee by the defendant, and was at the time hereinafter mentioned, acting within the scope of his employment.

"That it was the duty of plaintiff's intestate, to perform services and labor upon the machinery operated by the defendant, by applying grease thereto and otherwise doing such acts and things, as he was directed to do, and as were necessary and proper to run said machinery.

"That on the night of the thirteenth day of July, A. D. 1906, the plaintiff's intestate in the discharge of his duties,

filled up an oil cup, on the 'eccentric,' and turned to further discharge his duties, in and about said machinery. That the floor whereon plaintiff's intestate was walking, was greasy and slippery, and his left leg had been amputated below the knee, and plaintiff's intestate used an artificial limb and foot in walking. That defendant had caused plaintiff's intestate to labor and work, until the stump of his left leg, when it rested in the artificial limb, was bruised and sore, and caused much pain, suffering and difficulty in walking, all of which defendant well knew. That the machinery was running unevenly, and jerking, making it well nigh impossible for anyone, to avoid slipping on the greasy floor. That near the 'eccentric,' and where plaintiff's intestate was walking, was a large revolving wheel, unguarded and unprotected by a footboard, or guardrail, or in any other way. That plaintiff's intestate's artificial foot, was caught in said revolving wheel, he was hurled to and through the floor and his body, head and limbs were so bruised, mangled and crushed, that he died of the injuries so received. That plaintiff's intestate was ordered and directed to perform the labor and work, in which he received the above mentioned injuries.

"That said Camden Water, Light & Ice Company was in default, and did violate and fail to observe and discharge the plain duty, which it owed to the plaintiff's intestate, as its servant and employee, while engaged as aforesaid, under its authority and direction, in this, in carelessly and negligently providing and furnishing to plaitiff's intestate, unsafe and defective appliances, in that said Camden Water, Light & Ice Company, did carelessly and negligently fail and neglect to provide and furnish, ordinary safe, secure and proper machinery, free from jerk and jars when running. That the defendant was careless and negligent, in ordering and directing plaintiff's intestate, to go to an unsafe and dangerous place to work, in the nighttime, in his overworked and weakened condition. That defendant was careless and negligent, in allowing and permitting said revolving wheel,

to be and remain unguarded, thereby furnishing plaintiff's intestate, with an unsafe and dangerous place to work."

The defendant denied the allegations of the complaint, and set up the defenses of contributory negligence and assumption of risk.

The jury rendered a verdict in favor of the defendant, and the plaintiff appealed upon exceptions, which will be reported.

We proceed to the consideration of the exceptions:

*First Exception:* His Honor, the presiding Judge, thus stated the issues raised by the pleadings, as to the alleged acts of negligence:

"The two specific acts of negligence, that I conclude you are to pass upon, under my construction of these pleadings are these: The first one is, that the defendant was careless and negligent, in regard to directing the plaintiff's intestate, to go to an unsafe and dangerous place to work, in his overworked and weakened condition, etc. That is one act of negligence, you are to pass upon; and the other is, that the defendant was careless and negligent, in allowing and permitting said revolving wheel, to be and remain unguarded, thereby furnishing plaintiff's intestate an unsafe and dangerous place to work in. These are the two acts of negligence, that will be for your consideration. And plaintiff alleges, by reason of these two acts of negligence, one or both of them, that the intestate was killed."

No objection was interposed to this construction of the complaint.

In the case of *Spires* v. *Ry.,* 47 S. C. 28, 24 S. E. 992, the rule is thus stated: If the complaint alleges specific acts of negligence, then the plaintiff will be restricted to the introduction of such testimony only, as would tend to prove the acts of negligence, alleged in the complaint.

The same principle was recognized in the case of *Jenkins* v. *McCarthy,* 45 S. C. 278, 22 S. E. 883, wherein the Court

ruled, that a plaintiff who sets up negligence, solely in the manner of driving piles, will be confined to such issue, and cannot introduce evidence, that the piles were not sufficiently driven; that a party alleging a specific act of negligence, cannot, after issue joined on that allegation, introduce evidence of any other kind of negligence.

These authorities show that this exception cannot be sustained.

*Second Exception:* When the defendant's attorney, undertook to introduce the testimony mentioned in the exception, the plaintiff's attorney simply said: "We object," but did not state grounds of objection. The objection was not properly taken, as it failed to state the grounds thereof. *Youngblood* v. *Ry.,* 60 S. C. 9, 38 S. E. 232; *Bryce* v. *Cayce,* 62 S. C. 546, 40 S. E. 948.

*Third Exception:* The grounds of objection to the introduction of the testimony, mentioned in this exception, were thus stated by the plaintiff's attorney: "I object. He cannot bolster up his witness by another, as to an agreement; no evidence of anything Mr. Eve is going to state, was communicated to Mr. McKain. This witness never stated to Mr. McKain what the agreement was." His Honor ruled, that unless the defendant brought home knowledge to Mr. McKain, of the terms of the agreement under which the defendant was operating the machinery, then the testimony would not be competent. Thus practically sustaining the objection, interposed by the defendant's attorneys.

*Fourth Exception:* We do not, deem it necessary to cite authorities, to sustain the proposition which the presiding Judge charged. Nor can we conceive, how it was subject to the error, assigned in the exception.

*Fifth Exception:* The presiding Judge was not attempting to define the proximate cause. Another reason why the exception cannot be sustained is, because the appellant's attorneys have failed to show, that the error assigned, was prejudicial.

*Sixth Exception:* We desire to call attention to the only error assigned, which was as follows: "In making knowledge of the danger on the servant's part the sole criterion of his negligence, or assumption of risk, whereas the correct legal principle is, that if a person of ordinary care and prudence, under all the circumstances would undertake to operate with knowledge, such person does not assume the risk."

The plaintiff's third, fourth and eighth requests to charge were as follows:

3. "Where a servant is ordered to do a certain piece of work, if he undertakes to obey the order given with knowledge of the dangers, incident to obeying said order, whether or not he assumed the risk or was guilty of contributory negligence, are questions of fact for the jury—that would depend upon whether a man of ordinary reason and prudence would undertake to obey a command of that sort with knowledge of the dangers 'incident to obeying the command.' "

4. "Since the master is under a special duty, to inspect and investigate risks, to which the servant is exposed, and since the servant may rely upon the performance of his duty, the fact that the servant proceeds under the orders of the master, in performing an act, whereby he is exposed to unusual danger, renders the master liable for a resulting injury, to the servant, unless the risk of the act, was fully realized by the servant and was so apparent, that no man of ordinary prudence, situated as he was, would have undertaken it."

8. "If a master or superior, orders an inferior into a situation of danger, and he obeys and is injured, the law will not charge him with assumption of risk, unless the danger was so glaring that no prudent man would have entered into it."

In disposing of each request, the presiding Judge said: "I charge you that. That is the law, and I have already

charged it." Thus showing, that he not only charged the requests, but that he construed them as embodying the principles, which he had already charged. Therefore, the charge, when considered in its entirety, gave the plaintiff the full benefit of the principle, for which she contended.

*Seventh Exception:* The language of the charge was merely used by way of illustration. Furthermore, it cannot be denied, that persons laboring under physical disabilities, must be more careful than others, in going where they may encounter danger.

*Eighth Exception:* The language of the request is, with one or two minor charges, what was said by the Court in *Powers* v. *Oil Co.,* 53 S. C. 358, 31 S. E. 276, upon the question, whether, as a matter of law, a servant who relies upon the promise of the master, to repair a defective appliance, waives his right to insist upon the fact, that it was defective, by remaining in the service of the master. The presiding Judge could not have charged the request without violating section 26, article V of the Constitution which provides that "Judges shall not charge juries, in respect to matters of fact."

The request undertook to say what force and effect, should be given to certain facts, which could only be determined by the jury, unless that mode of trial was waived.

Judgment affirmed.