### OWENS v. ATLANTIC COAST LINE RAILROAD CO.

#### · (139 S. E., 779)

1. MASTER AND SERVANT—RECOVERY MAY BE HAD ONLY FOR INJURIES DUE WHOLLY OR IN PART TO EMPLOYER'S NEGLIGENCE (FEDERAL EMPLOYER'S LIABILITY ACT [45 USCA §§ 51-59]).—Under Federal Employer's Liability Act (45 USCA §§ 51-59 [U. S. Comp. St. §§ 8657-8665]), recovery may be had for death of an employee caused wholly or in part by the negligent acts of the employer, though no recovery can be had for injuries due solely to employee's own acts.

2. MASTER AND SERVANT—EVIDENCE OF NEGLIGENCE AS TO CAR INSPECTOR HELD INSUFFICIENT FOR JURY (FEDERAL EMPLOYER'S LIABILITY ACT [45 USCA §§ 51-59]).—In action under Federal Employer's Liability Act (45 USCA §§ 51-59 [U. S. Comp. St. §§ 8657-8665]) for death of car inspector, evidence of defendant's negligence *held* insufficient to go to jury.

Before MAULDIN, J., Florence.   Affirmed.

Action by Effie Owens, administratrix of the estate of M. H. Owens, against the Atlantic Coast Line Railroad Company.   Judgment for defendant, and plaintiff appeals.

*Messrs. C. T. McDonald* and *A. L. King,* for appellant, cite: *Nonsuit proper only where defendant free from negligence:* 134 S. C., 661.  *The custom of a railroad operating its road may be shown as a basis upon which employer had a right to act and rely:* 130 S. C., 459.  *Conclusions may be drawn from circumstances:* 99 S. C., 374; 116 S. E., 926; 98 S. C., 348, 386.  *Nonsuit:* 80 S. C., 545; 124 S. C., 314; Id., 124; 117 S. C., 19, 20; 113 S. C., 268; 86 S. C., 379; 128 S. C., 459; 107 S. C., 523.  *When facts submitted to jury:* 16 A. & E. Enc. L., 465; 55 S. C., 179; 66 S. C., 482.  *Under employer's act a servant does not assume risks caused by negligence of master:* 136 S. E., 234.

*Messrs. F. L. Wilcox and A. L. Hardee,* for respondent, cite: *When nonsuit proper:* 70 L. Ed., 1041; 266 U. S., 521; 69 L. Ed., 419; 3 Fed. (2nd), 604; 133 S. C., 219. *When employee violates rule promulgated for his safety and*

*as a result suffers injury he cannot recover against his employer:* 82 S. C., 542; 85 S. C., 471; 96 S. C., 228; 89 S. C., 15.

October 10, 1927.

The opinion of the Court was delivered by Mr. Justice Stabler.

This action was brought under the Federal Employer's Liability Act (45 USCA §§ 51-59 [U. S. Comp. St. §§ 8657-8665]) by the administratrix of the estate of M. H. Owens, for the benefit of his widow and her six children.

The complaint alleged that on the 16th day of March, 1923, while M. H. Owens, who was employed by defendant as a car inspector in its yard at Florence, South Carolina, was engaged in work of the defendant that was part of and connected with interstate commerce, he was run over and killed by one of defendant's trains, and that his death was caused by the gross and willful negligence of the defendant in moving the train, while it was being inspected by him, without giving any notice or warning or signals of its intention so to do and without first having received from him the proper clearance signals.

The answer admitted that the deceased was instantly killed on the yards of the defendant, at Florence, S. C., at the time stated in the complaint, and that he was at that time engaged in interstate commerce, but specifically denied that he was killed by the gross willfulness and wanton negligence of the defendant, and set up by way of affirmative defense the assumption of risk.

At the conclusion of the plaintiff's testimony, the defendant made a motion for a nonsuit upon the following grounds:

"(1) That there is no testimony to support a charge of negligence or willfulness on the part of the railroad company.

"(2) That, if there was any negligence, the testimony shows that it was on the part of the deceased, and not on the railroad company."

The motion was granted. The plaintiff by her four exceptions raises, in varying form, the point that the trial Judge erred in granting the motion for an order of nonsuit, contending that it appears from the record that there was ample evidence to go to the jury.

The following rules of the defendant were placed in evidence:

## RULE No. 26

"A blue flag by day and blue light by night, displayed at one or both ends of an engine, car, or train, indicates that workmen are under or about it. When thus protected, it must not be coupled to or moved. Workmen will display the blue signals, and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without first notifying the workmen."

## CAR INSPECTORS

"They will inspect all cars passing their station, especially the running gear, brake fixtures, and safety appliances, and make such needed repairs as they can, sending to shop all cars not fit for service.

"They will, when inspecting and making repairs to cars, protect themselves by placing a blue signal on each end of the car or train, as per rule No. 26.

"They will make no inspection or repairs to cars, either in trains or where liable to be moved, except under the protection of the signal prescribed in Rule No. 26."

The plaintiff's testimony tended to show that on the 16th day of March, 1923, M. H. Owens was employed by the defendant as a car inspector, at Florence, S. C.; that at 3

o'clock on the afternoon of that day Owens, J. C. Durden, and J. R. Partin went on duty for the defendant in the yard at Florence, working as one shift, and found a train consisting of about 60 or 65 cars on track 11; that they were told by the inspectors whom they relieved that the train had been inspected, and that the engine would be there about 4 o'clock; that only the brakes on the train remained to be inspected; that Partin and Durden went up the train on the south side, and Owens on the north side; that about 3:40 p. m. Owens, who was the most experienced man of the three and generally gave instructions, directed Durden to go back to the head of the train and couple the engine to it; that Owens and Partin then went to a train on an adjoining track where they worked for 10 or 12 minutes, when they heard the engine come to the train on track 11, and that then Owens left Partin to inspect the brakes on that train and himself went back to track 11, as he said, to help Durden, and went towards where the locomotive had been coupled up; that he walked around the head of the engine across the track; that about 10 minutes later the train on track 11 drew out, and the body of Owens was then found on the track, about 6 or 7 car lengths from where the engine was, with his feet next to the south rail and his head next to the north rail, his head severed, his legs mangled, and his fingers mashed; that the making of certain repairs on cars would require the workman to place his shoulders and arms under the car; that, customarily, after the engineer was told by the inspector that the train was ready for moving, he would blow the whistle twice for the purpose of notifying the train crew that the train was ready to go out, but that on this occasion the whistle was not blown before the train pulled out. There was no testimony that the signal required by rule 26 was displayed.

Under the Federal Employer's Liability Act, if the injuries and resulting death of Owens were caused wholly or in part by the negligent acts of the defend-

ant, the plaintiff would be entitled to recover, unless defeated by some affirmative defense. If, however, the injuries received were due solely to his own acts, no right of action would lie against the defendant, and a directed verdict would be proper. *Youngblood v. Southern Railway Company*, 137 S. C., 47; 134 S. E., 660.

The only question, therefore, which we have to consider, is the question whether, under the testimony, the injuries received by Owens were due wholly or in part to the negligence of the defendant, or whether they were due solely to own acts.

We fail to see any evidence of negligence on the part of the defendant. The respondent urges that the testimony does not show whether Owens went under the car in the course of his duties for the company, or for some purely personal reason, but, even if it be conceded that he went under the car in the course of his duties for the company, there is no testimony that he displayed or caused to be displayed the signal required by Rule 26. That rule prohibits the moving of a car or train protected by the signals, makes it the duty of the workmen to display the signals, and authorize their removal only by the same workmen who displayed them. Again, the regulations relating to car inspectors specifically require them to protect themselves by placing a blue signal on each end of the car or train according to Rule 26, and forbid them to make inspection or repairs to cars, "either in trains or where liable to be moved, except under protection of the signals prescribed in Rule No. 26."

Owens knew from the inspectors whom he relieved that the engine was to come into track 11 about 4 o'clock; about 3:40 o'clock he sent Durden to the head of the train to couple the engine to it, and 10 or 12 minutes later he heard the engine come into the track and left his work on another train to help with the train on track 11; he afterwards passed in front of the engine on track 11 and went down the track

6 or 7 car lengths. What he did next can only be conjectured, but the testimony clearly shows that he knew that the engine was attached to the train.

The appellant lays great stress upon the testimony as to the custom of blowing the whistle before taking out the train after inspection was completed. According to the plaintiff's own testimony, this custom was not for the purpose of warning the inspectors, who were required to protect themselves by displaying the blue signals, but for the purpose of notifying the train crew that the train was ready to pull out, and we do not think that the failure to blow the whistle on this occasion constituted neligence towards Owens. Even if the inspectors had come to rely upon the custom, the testimony does not suggest that the company had any knowledge or notice of such reliance.

In *Mann v. Railway Company*, 138 S. C., 241; 136 S. E., 234, and other adjudicated cases in this State, it is held, in effect, that an employee of a railroad may rely upon a custom of the company in operating its road, but we have found no case where it appears that such holding was made with reference to a custom unconnected with the work of the employee who was held to have a right to rely upon it.

The only conclusion that can be reached from the testimony in this case is that the injuries received by Owens were due solely to his own acts. The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.