12882

BELL v. ATLANTIC COAST LINE R. CO. *ET AL.*

(155 S. E., 397)

February, 1928.

*Messrs. Hagood, Rivers & Young,* for appellants,

Messrs. *J. D. E. Meyer, Thomas P. Stoney* and *A. Russell McGowan,* for respondent,

April 5, 1930.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This is an action for damages in the amount of $95,000 brought in the Court of Common Pleas for Charleston County, S. C., by the plaintiff, as administratrix of the estate of John M. Bell, deceased, for the benefit of herself, as the widow of the said John M. Bell. The action is against the defendants, Atlantic Coast Line Railroad Company, Peter Friday, and Herman F. Cardwell. The answer of defendants alleged that at the time of the injuries to and the death of the plaintiff's intestate both the plaintiff's intestate and the defendants were engaged in interstate commerce, and that the action should be and is under the Federal Employers' Liability Act, as amended (45 U. S. C. A. §§ 51-59.

At the trial, the testimony showed that the deceased and the defendants were engaged in interstate commerce at the time of the accident, and it was admitted by both plaintiff

and defendants that the action came within and was tried under the Federal Employers' Liability Act, as aforesaid; and the trial Judge so charged the jury.

The case was tried at the February, 1928, term of the Court of Common Pleas for Charleston County, and resulted in a verdict for the plaintiff against the defendants in the amount of $5,000 as aforesaid, which verdict was rendered on the 25th day of February, 1928. Due and timely notice of intention to appeal was served by the defendants, and thereafter within the time allowed by law this transcript of record and exceptions was prepared and served by the defendants-appellants.

While the appellants' exceptions are six in number, they by their brief submit for the consideration of this Court the single question as to whether the defendant was derelict in any duty that it owed to the plaintiff's intestate and guilty of any negligence.

In considering this question it should be remembered that cases tried under the Federal Employers' Liability Act are to be determined with respect to the form of action, sufficiency of pleading, and rules of evidence by the law of the state where the case is tried. See *Dutton v. Railroad Company,* 104 S. C., 31, 88 S. E., 263; *McNeil v. Holbrook,* 12 Pet., 89, L. Ed., 1011; *Central Vt. R. R. v. White,* 238 U. S., 507, 35 S. Ct., 865, 59 L. Ed., 1433, Ann. Cas., 1916-B, 252. See *Randall v. Railroad Company,* 109 U. S., 478, 3 S. Ct., 322, 324, 27 L. Ed., 1003, where it said that the rule that prevails in the Federal Courts is as follows: "It is the settled law of this Court that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the Court is not bound to submit the case to the jury, but may direct a verdict for the defendant. * * * And it has recently been decided by the House of Lords, upon careful consideration of the previous cases in England, that

it is for the Judge to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred; and it is for the jury to say whether from those facts, when submitted to them, negligence ought to be inferred."

In the *Mulligan case* it was held: "The state rules as to sufficiency of evidence to prove negligence apply in actions under the Federal Employers' Liability Act, * * * as that act contains no specific provisions as to quantity or method of proof of negligence." *Mulligan v. Atlantic Coast Line R. Co.,* 104 S. C., 173, 88 S. E., 445, Judgment affirmed (1917). *Atlantic Coast Line R. Co. v. Mulligan,* 242 U. S., 620, 37 S. Ct., 241, 61 L. Ed. 532.

And likewise in the *Dutton case* "The rule of the state Courts as to direction of a verdict applies to an action in them under the Federal Employers' Liability Act." *Dutton v. Atlantic Coast Line R. Co.,* 104 S. C., 16, 88 S. E., 263, judgment affirmed. *Atlantic Coast Line R. Co. v. Dutton,* 245 U. S., 637, 38 S. Ct., 191, 62 L. Ed., 525.

The next question, therefore, is: What is the law in this state relative to the granting of a nonsuit or the direction of a verdict as was stated in *Thornton v. Seaboard Air Line Ry.,* 98 S. C., 348, 82 S. E., 433, 434, CHIEF JUSTICE WATTS, speaking for this Court, stated: "It is so well settled that, if there is any competent testimony to go to the jury, a nonsuit cannot be granted or verdict directed that quotation of authority is unnecessary," and, " 'whenever there is any competent testimony it is the duty of the Judge to submit the case to the jury.' *Buist v. Mercantile Co.,* 73 S. C., 48, 52 S. E., 789." *Cain v. R. R. Co.,* 74 S. C., 89, 54 S. E. 244.

We, therefore, see that under the *Randall v. R. R. Company case, supra,* it is for the Judge to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred, and it is for the jury to say whether, from those facts when submitted to them, negligence ought to be inferred.

And, from the *Thornton v. Seaboard Air Line Ry. case,* that: "Whenever there is any competent testimony it is the duty of the Judge to submit the case to the jury."

We next, therefore, inquire: Was there actionable negligence on the part of the defendant in this case? What duty would the defendant owe the plaintiff under the circumstances?

In order to determine these questions it is necessary that we first ascertain the nature and extent of the duty imposed by the law upon the employer in providing for the safety of its employees.

This duty has been often stated and clearly defined both by this Court and the United States Courts: "The employer, whether a natural person or a corporate body, is under obligation not to expose the employee in conducting the employer's business to perils or hazards against which he may be guarded by proper diligence on the part of the employer. *Hough v. Railway Co.,* 100 U. S., 213, 217, 25 L. Ed., 612."

In *Taylor v. Winnsboro Mills,* 146 S. C., 28, at page 36, 143 S. E., 474, 477, it is said by the Supreme Court of South Carolina: "It is too well settled in this state to require the quotation of authorites to show that a master must exercise care to furnish his servant a reasonably safe place to work; however, the following cases sustain this principle: *McKain v. Camden Co.,* 89 S. C., 378, 71 S. E., 949; *Thomason v. Manufacturing Co.,* 95 S. C., 239, 78 S. E., 895. *Mann, Adm'r, v. Railway,* 138 S. C., 251, 136 S. E. 234."

In *Wilson v. A. C. L. Railway Company,* 134 S. C., 31, at page 33, 131 S. E., 777, the Court said: "The master is chargeable with the duty of exercising reasonable care in furnishing the servant with a safe place in which to work; he is not a guarantor of such safety. *Seaboard Air Line Railway Company v. Horton,* 34 S. Ct., 635; 233 U. S., 492, 58 L. Ed., 1062, L. R. A., 1915-C, 1 Ann. Cas., 1915-B,

475. The proof of an injury does not raise the presumption of negligence on the part of the master. *Holmes v. Davis,* 119 S. E., 249, 126 S. C., 231. A motion for a directed verdict in such cases should not be granted except where the Court can say that no other reasonable inference can be drawn from the evidence than that the master has discharged his duty to the servant."

The care required of the employer is that of reasonable diligence; "and reasonable diligence implies, as between the employer and employee, such watchfulness, caution, and foresight as, under all the circumstances of the particular service, a corporation controlled by careful, prudent officers ought to exercise." *Wabash R. Co. v. McDaniels,* 107 U. S., 454, 460, 2 S. Ct., 932, 938, 27 L. Ed., 605.

"In general terms, the degree of care required of an employer in protecting his employees from injury is the adoption of all reasonable means and precautions to provide for the safety of his employees while they are engaged in his employment, and this degree of care is to be measured by the dangers to be apprehended or avoided." *DeGraff v. New York Cent. & H. R. R. Co.,* 76 N. Y., 125, 131.

"It was the duty of the defendant to use reasonable diligence in furnishing a safe place for its employees to work in, and whatever risk the employee assumed in carrying on the defendant's business did not exempt the defendant from that duty." *Baltimore & Potomac R. Co. v. Mackey,* 157 U. S., 72, 87, 15 S. Ct., 491, 39 L. Ed., 624; *Union Pacific Ry. Co v. O'Brien,* 161 U. S., 451, 457, 16 S. Ct., 618, 40 L. Ed., 766. *Choctaw, Oklahoma, etc., R. R. Co. v. McDade,* 191 U. S., 64, 67, 24 S. Ct., 24, 48 L. Ed., 96. *Santa Fe Pacific R. R. Co. v. Holmes,* 202 U. S., 438, 441, 26 S. Ct., 676, 50 L. Ed., 1094. *Kreigh v. Westinghouse & Co.,* 214 U. S., 249, 255, 29 S. Ct., 619, 53 L. Ed., 984.

So now, therefore, bearing in mind the principle that, "if there is any competent testimony to go to the jury, a nonsuit cannot be granted or verdict directed," and "when-

ever there is any competent testimony it is the duty of the Judge to submit the case to the jury." *Thornton v. Seaboard Air Line Ry., supra.*

There is no dispute that the deceased was killed in the yards at Charleston by Engine No. 263, which said engine was backing into the "hostler's" track situated between the "pocket" track and the deceased's automobile.

The testimony shows that the engineer was backing into the hostler's track at a place where it was the known custom for employees to pass and repass.

The testimony was that the engineer could not see the deceased, he being on the opposite side of the engine.

The testimony was that the fireman on the engine so backing was not keeping a lookout, and that, had he been keeping a lookout, he could have seen the deceased walking across the track.

There was testimony that the engine could have been stopped in six feet.

The testimony was that the fireman discontinued his lookout seventy-five feet from the place Bell was struck.

The terminal trainmaster in charge of the yard at the time of Mr. Bell's death testified that when the brakeman left the engine at the switch he did so without authority. The other trainmaster, who was off duty at the time of the tragedy, corroborated this statement.

There was testimony that the Company's rule provided that employees must exercise care to avoid injury to others.

The defendants' witness, Mr. Clark, trainmaster in charge of the yard, testified: "It is the duty of employees, each to the other to try to avoid injury to the other and do everything possible to prevent it."

The defendants admitted that the brakeman deserted the engine at the switch.

There was testimony that it was the invariable custom for brakemen to ride on the rear of engines passing into

the hostler's track: "Q. Was it or not invariably the cus-
tom for engineers passing into the hostler's track to have a
brakeman on the rear? A. Yes, sir."

And in response to the question: "Q. And if an employee
saw an engine without a man on the rear would he or not
have a right to assume that the engine was not moving?"
the presiding Judge concluded: "Court: I think that would
be a question for the jury."

There was testimony that, if a brakeman had been on the
rear, it would have been possible for him to warn a man on
the track.

As a matter of fact, there was testimony that, though
Engineer O'Brien was not more than nine feet from the en-
gine when it passed, he did not hear it or its bell when it
passed, but that he did hear Mr. Cardwell call him, and that
the fireman likewise heard a human voice above the din of
noise.

We find that all of this was competent testimony from
which the jury could and from its verdict did conclude that
the deceased came to his death by reason of the negligence
of the defendants in taking no precaution whatsoever in
violation of its rules and in violation of the customs of its
yards for the protection of the life of the deceased.

"Where the servant of a railroad was run down in the
yards, but there were no eyewitnesses to his death, it will not
be presumed that he intended to commit suicide, and threw
himself under the cars, but it will be presumed that he was
attempting to carry out his duties with due care." *Thornton
v. Seaboard Air Line Ry.*, 98 S. C., 348, 82 S. E., 433.

In *Hudson v. Atlantic Coast Line R. R. Co.*, 123 S. C.,
488, 124 S. E., 584, which was a case where a flagman was
killed by being struck by the rear of a freight train when
backed up to make a coupling, wherein the evidence was
that the train was moved ten or fifteen feet, the body was
found under the cab, no bell was heard to ring, no lookout

on the rear of the train, but a light was on the rear of the train.

The unanimous opinion of this Court was: "His Honor committed no error in refusing to direct a verdict as asked for, but did right in submitting the case to the jury."

His Honor said, in refusing to direct a verdict for the defendant, this: "The Supreme Court has said in passing on a motion for a nonsuit, that an employer does owe some duties toward its employees, some duty for their protection while at work in the yard. And there is some testimony for the jury to say whether or not they discharged that duty. So I am going to let the case go to the jury. That was held in a case in this state. I don't recollect the case but it was discussing the duties owed at common law by an employer to employees in the railroad yard, where employees are generally moving about. Of course, employees must use care for their own protection, but the company owes them some duty; and if the jury find, under the Federal Act, that both were negligent, it would be for them to say how much each was negligent or whether the negligence of the employee was the sole cause. Of course, if the negligence of the employee was the sole cause, or if he was killed by a risk he assumed, he could not recover; but if his injury was due partly to the negligence of the railroad company, and partly his own negligence, then it would be left for the jury to say what recovery should be had. There is evidence for the jury to consider on those issues, and I will leave it to the jury."

We see no error, all exceptions are overruled, and judgment affirmed.

Mr. Justice Carter (concurring in result): I concur in the result of the opinion of the Chief Justice, in this case upon the ground that, in my opinion, the evidence given at the trial of the case was sufficient in kind and amount to warrant a finding that the negligence of the defendants caused the death of the deceased, under the applicable prin-

ciples of law as interpreted by the Federal Courts. The rule by which the evidence must be measured is not the one usually followed by our Court, but that which is announced in several cases decided by the Supreme Court of the United States, including the case of *A. C. L. Railroad Company v. Davis*, 279 U. S., 34, 49 S. Ct., 210, 73 L. Ed., 601, as follows: "It is unquestioned that the case is controlled by the Federal Employers' Liability Act, under which it was prosecuted. Hence, if it appears from the record that under the applicable principles of law as interpreted by the Federal Courts, the evidence was not sufficient in kind and amount to warrant a finding that the negligence of the railroad company was the cause of the death, the judgment must be reversed. *Gulf, M. & N. R. Co. v. Wells*, 275 U. S., 455, 457, 72 L. Ed., 370, 371, 48 S. Ct., 151, and cases cited." See also the recent case in this Court of *Shiver v. A. C. L. R. Co.*, 155 S. C., 531, 152 S. E., 717.

Messrs. Justices Blease and Stabler concur.

Mr. Justice Cothran (dissenting): It being conceded on all sides that this case is to be decided according to the decisions of the Supreme Court of the United States, in cases involving the liability of the defendant railroad company under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), I think it is clear that the leading opinion erroneously applies what is familiarly known as "the scintilla rule" in South Carolina, instead of the rule declared by the decisions referred to.

A reading of the opinion demonstrates, I think, that it cannot be reconciled with the authorities from the Supreme Tribunal, a few of which I quote:

In *Chicago, M. & St. P. R. Co. v. Coogan*, 271 U. S., 472, 46 S. Ct., 564, 565, 70 L. Ed., 1041, the Court said: "By the Federal Employers' Liability Act, Congress took possession of the field of employers' liability to employees in interstate transportation by rail, and all state laws upon that subject were superseded [citing cases]. The rights and ob-

ligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the Federal Courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act and proof of such negligence is essential to recovery. *The kind or amount of evidence required to establish it is not subject to the control of the several states."*

In *Atlantic Coast Line R. Co. v. Davis*, 279 U. S., 34, 49 S. Ct., 210, 73 L. Ed., 601, the Court said: "It is unquestioned that the case is controlled by the Federal Employers' Liability Act, under which it was prosecuted. Hence, if it appears from the record that under the applicable principles of law as interpreted by the Federal Courts, the *evidence was not sufficient in kind or amount to warrant a finding that the negligence of the railroad company was the cause of the death, the judgment must be reversed."*

In *Gulf, M. & N. R. Co. v. Wells*, 275 U. S., 455, 48 S. Ct., 151, 152, 72 L. Ed., 370: "Hence, if it appears from the record that under the applicable principles of law as interpreted by the Federal Courts, *the evidence was not sufficient in kind or amount* to warrant a finding that the negligence of the engineer was the cause of the injury, the judgment must be reversed."

The same language occurs in *Atlantic Coast Line R. Co. v. Driggers*, 279 U. S., 787, 49 S. Ct., 490, 73 L. Ed., 957.

See, also, *Gunning v. Cooley* (March 12, 1930), 281 U. S., 50 S. Ct., 231; 74 L. Ed., 720.

The exceptions in this case raise the single question that the defendant was not derelict in any duty that it owed to plaintiff's intestate, therefore was not guilty of any negligence, and that a nonsuit should have been granted at the close of plaintiff's testimony and a verdict directed for the defendant at the end of the whole case.

Mr. Bell had crossed the hostler track from west to east just prior to the accident; he saw, or could and should have seen, Engine No. 263 about to come into the track; he was

familiar with the location and knew that engines coming into the yards in the morning off the run were to be placed on that track; he was an experienced employee in the yard and knew that engines moved about on the tracks, and therefore he assumed the risk of being struck by a moving engine and that it was his duty to look out for the engine and not the engine for him.

In the case of *Delaware, L. & W. R. Co. v. Koske,* 279 U. S., 7, 49 S. Ct., 202, 203, 73 L. Ed., 578, the facts were that Koske was getting off of an engine in the yards of the defendant railroad and put his foot into a ditch or hole that was left in the yard. The Court found that the only hole in the yard was an open drain that had been there some time. The Supreme Court of the United States said: "The Federal Employers' Liability Act permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negligence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured, and that in whole or in part his injuries resulted proximately therefrom. And, except as provided in Section 4 of the Act, the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees."

Again: "Defendant was not bound to maintain its yard in the best or safest condition; it had much freedom in the selection of methods to drain its yard and in the choice of facilities and places for the use of its employees. Courts will not prescribe standards in respect of such matters or leave engineering questions such as are involved in the construction and maintenance of railroad yards and the drainage systems therein to the uncertain and varying judgment of juries."

The case of *Aerkfetz v. Humphreys,* 145 U. S., 418, 12 S. Ct., 835, 836, 36 L. Ed., 758 is very much in point. In that case the facts were:

Plaintiff was a track repairer in the Delray yards, which had twelve tracks. A switch engine was working there making up trains. Plaintiff was working on a track at the west end of the yard when a switch engine, pushing two cars, moved slowly along the track on which he was working. Plaintiff stood with his back to the approaching cars and so remained until he was struck and injured by the first car.

Plaintiff was experienced in his work and knew that the switch engine was moving in the yard making up trains.

The Court said: "With that knowledge he placed himself with his face away from the direction from which cars were to be expected, and continues his work without ever turning to look. Abundance of time elapsed between the moment the cars entered upon the track upon which he was working and the moment they struck him. There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines movng forward and backward, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach. The engine was moving slowly, so slowly that any ordinary attention on the part

of the plaintiff to that which he knew was a part of the constant business of the yard would have made him aware of the approach of the cars, and enabled him to step one side as they moved along the track. It cannot be that under these circumstances the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employees who had, all the time, knowledge of what was to be expected."

The very recent case of *Toledo, St. L. & W. R. Co. v. Allen,* 276 U. S., 165, 48 S. Ct., 215, 216, 72 L. Ed., 513, is decisive of this case.

Plaintiff was a car checker working in the railroad yard where there were a number of parallel tracks. The clearance between cars on adjoining tracks was two feet nine inches without allowing for grabirons that projected from the cars.

His duties required him to be in the yard and go from place to place checking cars.

The allegations of negligence were that there was not adequate space between the tracks, and that there was a negligent failure to warn him of the approach of cars. Plaintiff was struck and injured by two cars that were shunted from the end of a string of some 20 or 25 cars and allowed to roll unattended down the track by their own momentum. The accident happened in the nighttime. The yard was unlighted, there were no lights on the cars, and nobody warned Allen of their approach. It was not even a moonlight night. The Court says:

"The Act of Congress under which plaintiff seeks recovery took possession of the field of liability of carriers by railway for injuries sustained by their employees while engaged in interstate commerce, and superseded state laws upon that subject [citing cases]. This case is governed by that act and the principles of the common law as applied in the Courts of the United States. The plaintiff cannot recover in the absence of negligence on the part of the defendant."

"And, except as specified in Section 4 of the Act (45 U. S. C. A.; § 54), the employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated by him, the extraordinary risks and those due to negligence of his employer and fellow employees."

The clearance between the cars on the adjoining tracks was two feet nine inches without considering the grabirons on some of the cars that projected four and one-half inches more.

The Court below authorized the jury to find the defendant guilty of negligence if the space between the tracks was so narrow that a person was in danger of being struck by cars moving on one of the tracks when the other was occupied. The Supreme Court said:

"While this space was sufficient to enable plaintiff to keep out of the way of the moving cars, the danger attending his work would have been lessened if the distance between the tracks had been greater. The work of checking cars in a yard at night when switching is being done is necessarily attended by much danger. But fault or negligence may not be inferred from the mere existence of danger or from the fact that plaintiff was struck and injured by the moving car. * * *

"The rule of law which holds the employer to ordinary care to provide his employees a reasonably safe place in which to work did not impose upon defendant an obligation to adopt or maintain any particular standard for the spacing or construction of its tracks and yards [citing cases]. Carriers, like other employers, have much freedom of choice in providing facilities and places for the use of their employees. Courts will not prescribe the space to be maintained between tracks in switching yards, nor leave such engineering questions to the uncertain and varying opinions of juries."

Held that this question should not have been submitted to the jury, as plaintiff had knowledge of the situation.

The Court below held the defendant negligent in failing to ring the engine bell or blow the whistle and in shunting cars along the track unattended and unlighted.

The Supreme Court held that the ringing of bells and blowing of whistles in switching movements in the yards where there were constant shifting movements would have simply made confusion.

"And there is no support for the assumption that plaintiff was without knowledge of the switching practice followed in that yard or that movement in question created an unusual hazard. On the evidence it must be held that he knew how switching was done there; and, in the absence of proof that he was exposed to some unusual danger by reason of a departure from the practice generally followed, it cannot be held that defendant was in duty bound to give him warning. The members of the switching crew had a right to believe that he would keep out of the way of the shunted car."

The amended petition alleged that the switching crew saw, or by the use of ordinary care could have seen, the plaintiff between the tracks, and by the use of ordinary care could have held the cars that injured him stationary, or could have stopped them.

The Supreme Court said: "In the absence of knowledge on their part that he was in a place where he was liable to be struck and *oblivious of that danger* [italics ours], they were not required to vary the switching practice customarily followed in that yard or to warn him or to take other steps to protect him."

The section of the Federal Employers' Liability Act spoken of above is the section which provides that the employee does not assume any risk caused by a violation of any of the Acts of Congress providing for the safety of the employee, such as the Safety Appliance Act (45 U. S. C. A., § 1 *et seq.* ), or the Boiler Inspection Act (45 U. S. C. A., § 22 *et seq.*). None of those acts are involved in this case, and we are not concerned with that section.

The above case was a much stronger case for the plaintiff; the cars being shunted or kicked down a track with no attendant, unlighted on a dark starlight night, and yet the Court held that the defendant was under no duty to warn the man. In the instant case the accident happened in broad daylight, where the decedent had a clear and unobstructed view up and down the track; had just crossed it safely and should have seen the engine about to enter it and should have taken some care for his own safety.

Moreover, even if the testimony shows that Mr. Bell at the time of the accident was engaged in carrying a block of ice from the back of the tender of the engine on which he had been working to his automobile to take it home and was not fulfilling any duty or employment for the railroad company, and therefore the railroad owed him only the care not to hurt him recklessly or willfully at the time of the accident, he would have been just as any other person, a stranger to the railroad, would be in crossing the track; and therefore the principles of the common law as laid down by the Supreme Court of the United States in the *Goodman case,* 275 U. S., 66, 48 S. Ct., 24, 25, 72 L. Ed., 167, 56 A. L. R., 645, are very applicable to this case, and apply even more strongly than in that case. That was a case where a driver of an automobile was struck at a grade crossing. He was on the road, a publicly-traveled place. In the case at the bar there was no regular crossing at the place where Mr. Bell was killed. In the *Goodman case,* the railroad was under more duty to look out for the traveler than it would be to look out for persons employed about its yards who were familiar with the operations and knew that engines and cars were constantly to be expected to move on the tracks. The *Goodman case* was not a case of contributory negligence. The Supreme Court of the United States said: "The defense is that Goodman's own negligence caused his death."

I quote from *B. & O. R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 25, 72 L. Ed., 167, 56 A. L. R., 645: "We

do not go into further details as to Goodman's precise situation, beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train. comes upon him before he is clear, of the track. He knows that he must stop for the train. not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution, he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true, as said in *Flannelly v. Delaware & H. Co.*, 225 U. S., 597, 603, 56 L. Ed., 1221, 1222, 44 L. R. A. (N. S.), 154, 32 S. Ct., 783, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear, it should be laid down once for all by the Courts."

The Supreme Court of South Carolina recognized the same principle in the case of *Cable Piano Company v. Southern Railway*, 94 S. C., 143, 77 S. E., 868: "As there was nothing to indicate that the· driver of the team was not in possession of his faculties, the engineer had a right to assume that he would exercise them, and not drive upon the track in front of the approaching train. According to the undisputed evidence, the track is straight and the view is unobstructed for at least three-quarters of a mile in both directions from the crossing. It necessarily follows that, if the driver had looked before going upon the crossing, he would have seen the train in time to prevent the collision. The law imposes upon every capable person the duty of ob-

serving due care for his own safety when about to cross a railroad track, which necessarily involves the exercise of his senses." Approved: *Osteen v. A. C. L.,* 119 S. C., 438, 112 S. E., 352. *Bain v. N. W. R. R.,* 120 S. C., 370, 113 S. E., 277. *Chisolm v. S. A. L.,* 121 S. C., 394, 114 S. E. 500. I do not understand that the Supreme Court of South Carolina has ever overruled this principle, except in the case of accidents occurring at a grade crossing where the testimony showed that the defendant railroad failed to give the statutory signals.

The Supreme Court of the United States defined negligence in the old case, *Parrott v. Wells (Nitro-Glycerine case),* 15 Wall., 524, 536, 21 L. Ed., 206: " 'Negligence' has been defined to be 'the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' "

Again: "Outside of these cases [cases of passengers of whom carriers are insurers], in which a positive obligation is cast upon the carrier to perform safely a special service, the presumption is that the party has exercised such care as men of ordinary prudence and caution would exercise under similar circumstances, and if he has not, the plaintiff must prove it."

Tested by the above definition and the decisions of the Supreme Court of the United States above quoted, the defendant company is in no wise responsible for the unfortunate death of Mr. Bell. As said in the *Goodman case,* his own negligence caused his death. He had only to look before he swung his heavy piece of ice from the back of the tender of Engine No. 1211, and threw himself into the path of Engine No. 263, which was backing no faster than a man ordinarily walks, and he never would have been hurt. If it is going to be supposed that the defendant was negligent because Mr. Bell got killed by its engine, how

much more reasonable it is to suppose that Mr. Bell grasped the heavy piece of ice with his ice tongs while on the back of the tender of Engine No. 1211 and, without looking to see if any engine or car was coming on the adjoining track and in utter disregard of his own safety, swung it from that height and swung himself beneath the wheels of the approaching engine.

There may be some argument made that there was some evidence that there was a custom to have a brakeman precede the engine into the hostler track and that the failure to do so constituted negligence. There is nowhere in the testimony any evidence of a custom to send a brakeman or other person ahead of the engine into the hostler track to warn people of the approach of an engine. The only testimony of any such custom will be found in the testimony given by plaintiff's witnesses. It is shown by the same testimony that, if it were a custom, the object was not to warn people, but to protect the engine in case there should be anything on the track. Plaintiff's witness, Cardwell (one of the defendants), states:

"Q. What is the object of having a brakeman ride on the back of the engine? A. They have to make these couplings for us to get in the clear. If the track is open they don't require them to ride back there."

Plaintiff's witness, Walters, a discharged employee of the railroad company, testified on direct examination:

"Q. Is it or not the duty of a brakeman when he puts a main line engine into the hostler's track to ride the rear of that engine until that engine is parked on the hostler's track? A. It is; yes, sir.

"Q. For what purpose does he do that? A. To protect the engine from anything that might be on the rails; they are always equipped with a red lantern for brakemen to use at night, so the brakemen can have it to protect the engine while in motion."

And again, where he was asked the position of the brakeman when he rode on the rear of the engine, and he said on the right hand side always, he went on:

"Q. Why is that? A. So he can see the engineer and the engineer see him pass signals."

"Q. Is he a pilot for the engine? A. Yes, sir."

He was asked later, if a brakeman was there, could he warn a man on the track, and when asked how would he warn him, he said: "He can holler if necessary or whistle."

The plaintiff's witness, W. C. Smith, a former conductor of the defendant railroad, who was discharged, testified that it was a custom to have a man at the back of the engine and went on as follows:

"Q. You say that custom applies to all places? A. Yes, sir, when an engine is backing up.

"Q. The man rides there to protect the engine? A. Yes, sir."

The defendant's witnesses all testified that there was no custom for a man to ride on the rear of the engine when only put into the hostler track unless there was another engine on that track to which it was necessary for the engine backing in to couple with. If there were no engine in there, or if it were not necessary to couple the engine backing in, then in that event the brakeman stopped at the switch and let the engine go in alone.

The case of *Pheasant v. Director General* (C. C. A.), 285 F., 342, 344, is very much in point. Pheasant, the locomotive engineer, had put his train on a siding and had gone to a tower to report. When returning to his train he and his fireman were walking together and looked both ways before walking on the track and saw nothing and so walked on the track towards his engine. The fireman heard a rumbling, called to Pheasant, and jumped, but Pheasant was too late and was hit. The negligence which the plaintiff charged to the Central Railroad Company of New Jersey was the failure of the conductor of the standing train to station a

brakeman forward of the engine, who, had he been there, might have warned Pheasant of the other train coming on the track on which he was walking.

The Court said: "Turning to the charge of negligence against the Central, it is clear that if a brakeman is required by the rules of the company to advance forward of a train standing on a siding, it is for the purpose of giving warning of its presence and of protecting it and those upon it from collision. It is not for the purpose of protecting workmen when crossing and walking upon other tracks in and about their business. In this case a brakeman was not sent forward; nor did an injury of the kind which such precaution is intended to avoid happen. What a brakeman, if one had been sent forward, might have done to warn Pheasant when walking upon a track other than the one he was guarding, can only be surmised. If he had realized the situation he doubtless would have acted on an humane impulse. Conceivably he might have done nothing. The brakeman would have owed him no duty in the relation which then existed between them. Whatever the brakeman might have done, or might not have done, would have been so remote from the peculiar duty of his station that it would not have amounted to negligence in which to charge his principal."

In the case of *Chicago, St. P., M. & O. R. Co. v Kroloff* (C. C. A.), 217 F., 525, 528, the deceased, one Brotsky, was killed while crossing tracks in the yards of the defendant company early in the morning. Among the charges of negligence which the Court submitted to the jury was:

"Omission to have the foreman or one of his helpers on the north footboard to look out for and warn pedestrians, and to turn the angle cock and stop the engine.  *  *  *

"The plaintiff alleged that it had long been the practice and custom of the defendant, in moving its switch engines in its yards and over the place where it struck Mr. Brotsky, to place a man or men on the approaching end of such engines to keep a lookout for and to warn him and other employees

of the approach of such engines, and to warn those operating such engines of the proximity of persons on the tracks, and that the defendant failed to do so. No witness came to say that there had ever been any custom or practice to place a man or men on the approaching end of the switch engines at the place of the accident, or elsewhere in the yards, to keep a lookout for and warn employees of the approach of the engines, or to notify engineers of the proximity of persons in the yards. On the other hand, there was positive and un-contradicted testimony that there was no such custom. The evidence, in the most favorable view of it for the plaintiff, went no farther than to tend to show that the foreman and the two switchmen, when actively engaged in turning switches and handling cars during short movements, ordi-narily rode on the footboard of the engine, from which it was most convenient for them to do their work, whether this was the footboard on the advancing or the retreating end of the engine, that they had often ridden on the footboard of the advancing end at the place of the accident, that either foot-board was a proper place for them, but that in long move-ments—and the movements the engine was making at the time of the accident was a long movement—they usually rode on the retreating end of the engine. There was also evi-dence that there was an angle cock within reach of a man on the north footboard of the engine and tender, by turning which the air could be so manipulated as to stop the engine, and the plaintiff insisted that it was negligence not to have a man on that footboard to turn this angle cock.

"But the limit of the plaintiff's duty was to exercise or-dinary care in moving its switch engine through its yards, and the burden was on the plaintiff to prove that it failed to use that degree of care. The best test of ordinary care is that care that ordinary prudent and careful railroad opera-tors commonly use under similar circumstances, and in the absence of evidence of that care it is such care as ordinarily prudent and careful persons would use under like circum-

stances. Moreover, the legal presumption is, in the absence of countervailing evidence, or of indisputable negligence, that the degree of care the defendant exercised was such as a prudent and careful person would exercise under like circumstances. No witness came to say that prudent railroad companies ordinarily placed a man on the advancing ends of their switch engines to look out for and warn pedestrians passing through their yards under such circumstances as this case discloses, or that prudent operators would do so. There was no testimony that prudent operators would, or that operators ever had, in like circumstances, placed a man on the approaching end of a switch engine to turn the angle cock and stop the engine, or to notify the engineer of the proximity of persons on the track. And the failure to do these things certainly was not clear or indisputable negligence."

So in the present case there is no testimony of any custom of having any employee on the engine to warn employees or other pedestrians of the approach of the engine, and, on the other hand, the testimony is clear that, if a brakeman preceded the engine into the hostler track, it was for the purpose of protecting the engine and not for giving warnings.

The case of *St. Louis & S. F. R. Co. v. Conarty*, 238 U. S., 243, 35 S. Ct., 785, 787, L. Ed., 1290, is analagous, because in that case the claim was made that, because there was a violation of the Safety Appliance Act, the railroad was guilty of negligence, but the Supreme Court held that a violation of the Safety Appliance Act was not negligence, where a switch engine, on the step of which the deceased was riding, bumped into a freight car that had no coupler or drawbar at that end. It was not intended to couple to the car, and the hitting of it was accidental. The deceased was crushed between the engine and the car. Had the car been equipped with the coupler and drawbar, there would have been sufficient space between it and the engine so that the man

would not have been mashed. The Court said: "We are of opinion that the deceased, who was not endeavoring to couple or uncouple the car or to handle it in any way, but was riding on the colliding engine, was not in a situation where the absence of the prescribed coupler * * * operated as a breach of a duty imposed for his benefit, and that the Supreme Court of the state erred in concluding that the Safety Appliance Act required it to hold otherwise."

The testimony here is that when a man walked ahead of the engine it was not to warn others of the approach of the engine, but to protect the engine, and therefore it was not a breach of duty imposed for Bell's benefit.

This Court has recognized the principle that, where a custom is for one purpose, a person injured cannot say that he relied on it for an entirely different purpose.

In the case of *Owens v. Atlantic Coast Line Railroad,* 141 S. C., 359, at page 364, 139 S. E., 779, 780, the Court said: "The appellant lays great stress upon the testimony as to the custom of blowing the whistle before taking out the train after inspection was completed. According to the plaintiff's own testimony, this custom was not for the purpose of warning the inspectors, who were required to protect themselves by displaying the blue signals, but for the purpose of notifying the train crew that the train was ready to pull out, and we do not think that the failure to blow the whistle on this occasion constituted negligence towards Owens. Even if the inspectors had come to rely upon the custom, the testimony does not suggest that the company had any knowledge or notice of such reliance."

The law would require Mr. Bell to protect himself by looking before going on a railroad track in a switching yard where he well knew engines and cars were constantly moving and could not rely upon the custom, if it was one, that a man should precede an engine into the hostler track for the purpose of piloting the engine or protecting it.

The case of *Reading Company v. Haldeman*, decided by the Circuit Court of Appeals, Third Circuit, 20 F. (2d), pages 53, 55, is very much like the present case. The deceased was killed in the yards of the railroad company by stepping on the track in front of a switch engine. The Court held:

"It will thus be seen that the work on which the decedent was engaged was one of peril; that the noise incident to escaping steam in such yards, the uncertain movement of engines, the fact that no system of warnings has been, or indeed could be, devised by which danger could be avoided, have made this Court hold to the reasonable rule that, as said by it in *Connelley v. Pennsylvania R. Co.,* 201 F., 54 47 L. R. A. (N. S.), 867 (cited by Supreme Court in *Chesapeake & O. R. Co. v. Nixon,* 271 U. S., 218, 46 S. Ct., 495, 70 L. Ed., 914), 'from the nature of such employment, the duty of self-preservation has to rest on them, for no adequate protection, other than self-protection, can be afforded them. And such has been the reasonable holding of the law.' Seeing, then, that no negligence has been shown on the part of the railroad in failing to have a warning system, and in view of the evidence shown by the plaintiff's case that the deceased stepped on the coal dock track immediately in front of an engine coming on a track where, if he had looked, he could have seen its approach for 400 or 500 feet, we are constrained to hold the Court should have given binding instructions for the defendant.

"In so holding we have not overlooked the fact that the trial Judge admitted testimony of witnesses that good railroading required the railroad to place a man on the tender of a locomotive when backed in this engine yard."

For these reasons I think that the judgment should be reversed and the case remanded for judgment in favor of the defendants under Rule 27.