# Railroad Company *versus* Aspell.

1. Railroad companies are answerable in actions of tort for the direct and immediate consequences of errors committed by themselves or caused by the negligence of themselves or their agents; but not for perils to which a passenger exposes himself by his own rashness or folly.

2. A railroad company is not liable to a passenger for an accident which he might have prevented by ordinary attention to his own safety.

3. A passenger who has been negligently carried beyond a station where he intended to stop, and where he had a right to be let off, may recover compensation for the inconvenience, loss of time, and labor of travelling back; but where the plaintiff, under such circumstances, jumped off the car when in motion, though warned not to do so, it was *Held* that he could not recover for the injury sustained.

4. The principle that there can be no recovery for an injury caused by the mutual neglect of both parties is applicable to an action for an injury which is founded on *a contract*.

5. It was not carelessness in a conductor to announce the place to which the train was approaching, being a usual stopping-place—it was not necessary for him to wait till the train was actually stopped before announcing it.

6. A party is not chargeable with negligence in exposing himself to a manifest danger in endeavoring to avoid one to which he is exposed; but it was rashness in a passenger to leap from a railroad car in motion in order to avoid the inconvenience of being carried further, especially when warned of the danger of leaping from the car and informed that the car would be stopped and backed to the usual stopping-place.

ERROR to the Common Pleas of *Delaware county*.

This was an action on the case by Richard Aspell against The Pennsylvania Railroad Company.

It was alleged in the declaration that the plaintiff became a passenger in the cars of the Pennsylvania Railroad Company from Philadelphia to Morgan's Corner; that the car was not stopped at

[Railroad Company *v.* Aspell.]

the latter place so as to allow him to alight safely—that in attempting to alight, he was, by reason of the rapid motion of the cars, thrown upon the ground, and one of his feet injured.

The plea was not guilty. Verdict for plaintiff for $1500.

The plaintiff took passage from Philadelphia for Morgan's Corner in March, 1851, in the *night* line. Just before reaching the latter place, the state agent endeavored to give the usual signal to the engineer to stop, by pulling the bell-rope. The rope did not operate, though the speed of the train was checked by the engineer in order more safely to pass certain switches. The speed of the train increasing, other signals were made to the engineer to stop, but whilst the train was in motion the plaintiff leaped from the car, though warned by the conductor and brakesman not to do so, and informed that the train would be stopped and backed to the station. The plaintiff's foot was injured.

The Court below charged that the pulling the bell-rope and the announcement of *Morgan's Corner* warned the plaintiff that he had arrived there, and was expected to prepare for leaving. That though he was warned not to jump, he could nevertheless recover for the injury received. That the agents of the company, in announcing to the passengers the place of arrival while the cars were in motion at the rate of from seven to ten miles an hour, did not exercise the degree of diligence and care which the law required. That the train should have been *stopped* before such announcement as to the place was made.

It was further charged that in this case *a contract* existed, and the train should have been stopped. That the announcement of Morgan's Corner caused the plaintiff, in going to the platform, to be in a position of danger, and although it was imprudent in the plaintiff to jump from the car, though warned of the danger, yet the agents of the company being in fault, the plaintiff could recover.

It was further charged that the imprudence of the plaintiff might be considered by the jury in fixing the damages.

The portions of the charge referred to were assigned for error.

*W. Darlington*, for plaintiff in error.—Whenever personal injury is concerned, the question is one of negligence: 2 *Esp. N. P. Cases* 533; 9 *Bing.* 457; 13 *Wend.* 626. In case of passengers, carriers are responsible for negligence: 13 *Wend.* 628. Negligence in the passenger bars any action *by him*. The party suing for injury occasioned by negligence should be wholly without fault: 19 *Wend.* 399; 21 *Id.* 615; 5 *Barbour* 337; 8 *Id.* 368; 11 *Id.* 112. In order to entitle a party to damages his negligence should not contribute to the injury: 13 *Barbour* 9; 12 *Id.* 494, Collins *v.* Albany, &c., Railroad Company; 14 *Barb.* 585; 8 *Barr* 482, Laing *v.* Calder.

If the announcement was made before the train reached Mor-

[Railroad Company v. Aspell.]

gan's Corner, it was still contended that this announcement was not the immediate cause of the injury—and that to justify the passenger in leaving the body of the car on account of apprehended injury, there must be danger to *life or limb* in remaining in it: 13 *Peters* 181, Stokes *v.* Saltonstall.

*Lewis*, for defendant in error.—It was contended that it being in the *night time*, the passengers could not tell at what rate the train was moving, and that the circumstances showed such inattention to the safety of the passengers as amounted to negligence on the part of the agents of the company: cited Stokes *v.* Saltonstall, 13 *Peters* 181; *Story on Bail*, § 600.   When the place was announced, it should also have been stated that the train would be stopped.   After the defendants' negligence had caused circumstances of difficulty, it did not relieve the company to show that the plaintiff did not conduct himself with the circumspection which a person self-possessed would have exercised.   Carriers are bound to exercise extreme care not only in the structure of the road, but in the arrangements necessary to the safety of passengers: 4 *Cush.* 402.

The opinion of the Court was delivered by

BLACK, C. J.—The plaintiff below was a passenger in the defendants' cars from Philadelphia to Morgan's Corner.   The train should have stopped at the latter place; but some defect in the bell-rope prevented the conductor from making the proper signal to the engineer, who, therefore, went past, though at a speed somewhat slackened on account of the switches which were there to be crossed.   The plaintiff, seeing himself about to be carried on, jumped from the platform of the car and was seriously hurt in the foot.   He brought this action; and the jury, with the approbation of the Court, gave him $1500 in damages.

Persons to whom the management of a railroad is intrusted, are bound to exercise the strictest vigilance.   They must carry the passengers to their respective places of destination, and set them down safely, if human care and foresight can do it.   They are responsible for every injury caused by defects in the road, the cars, or the engines, or by any species of negligence, however slight, which they or their agents may be guilty of.   But they are answerable only for the direct and immediate consequences of errors committed by themselves.   They are not insurers against the perils to which a passenger may expose himself by his own rashness or folly.   One who inflicts a wound upon his own body, must abide the suffering and the loss, whether he does it in or out of a railroad car.   It has been a rule of law from time immemorial, and is not likely to be changed in all time to come, that there can be no recovery for an injury caused by the mutual default of both

N 2

[Railroad Company *v.* Aspell.]

parties. When it can be shown that it would not have happened, except for the culpable negligence of the party injured concurring with that of the other party, no action can be maintained. A railroad company is not liable to a passenger for an accident which the passenger might have prevented by ordinary attention to his own safety, even though the agents in charge of the train are also remiss in their duty.

From these principles, it follows very clearly that if a passenger is negligently carried beyond the station where he intended to stop and where he had a right to be let off, he can recover compensation for the inconvenience, the loss of time, and the labor of travelling back; because these are the direct consequences of the wrong done to him. But if he is foolhardy enough to jump off without waiting for the train to stop, he does it at his own risk, because this is gross imprudence, for which he can blame nobody but himself. If there be any man who does not know that such leaps are extremely dangerous, especially when taken in the dark, his friends should see that he does not travel by railroad.

It is true that a person is not chargeable with neglect of his own safety, when he exposes himself to one danger by trying to avoid another. In such a case, the author of the original peril is answerable for all that follows. On this principle we decided last year at Pittsburgh, that the owners of a steamboat, which was endangered by a pile of iron wrongfully left on the wharf, and to get clear of it was backed out into the stream where she was struck by a coal boat and sunk, had a good cause of action against the city corporation, whose duty it was to have removed the iron. If, therefore, a person should leap from the car under the influence of a well grounded fear that a fatal collision is about to take place, his claim against the company for the injury he may suffer, will be as good as if the same mischief had been done by the apprehended collision itself. When the negligence of the agents puts a passenger in such a situation, that the danger of remaining on the car is apparently as great as would be encountered in jumping off, the right to compensation is not lost by doing the latter : and this rule holds good, even where the event has shown that he might have remained inside with more safety. Such was the decision in Stokes *v.* Saltonstall, 13 *Peters* 181, so much relied on by the defendant in error. A passenger in a stage-coach seeing the driver drunk, the horses mismanaged, and the coach about to upset, jumped out and was thereby much hurt. The Court held the proprietors of the line responsible, because the misconduct of their servant had reduced the passenger to the alternative of a dangerous leap or remaining at great peril. But did the plaintiff, in the present case, suffer the injury he complains of by attempting to avoid another with which he was threatened? Certainly not. He was in no possible danger of anything worse than being carried on to a place

[Railroad Company *v.* Aspell.]

where he did not choose to go.    That might have been inconvenient, but to save himself from a mere inconvenience by an act which put his life in jeopardy, was inexcusable rashness.

Thus far I have considered the case without reference to certain facts disclosed in the evidence, which tend to diminish the culpability of the defendants' agents, while they aggravate (if anything can aggravate) the folly of the plaintiff.    When he was about to jump, the conductor and the brakesman entreated him not to do it, warned him of the danger, and assured him that the train should be stopped and backed to the station.    If he had heeded them, he would have been safely let down at the place he desired to stop at, in less than a minute and a half.    Instead of this, he took a leap which promised him nothing but death; for it was made in the darkness of midnight, against a woodpile close to the track, and from a car going probably at the full rate of ten miles an hour.

Though these facts were uncontradicted, and though the Court expressed the opinion that no injury would have happened to the plaintiff but for his own imprudence, the jury were, nevertheless, instructed that the defendants were bound to compensate him in damages.    The learned judge held that the cases of mutual neglect did not apply, because this action was on a contract.    Now, a party who violates a contract is not liable any more than one who commits a tort, for damages which do not necessarily or immediately result from his own act or omission.    In neither case is he answerable for the evil consequences which may be superadded by the default, negligence, or indiscretion of the injured party.    There is no form of action known to the law (and the wit of man cannot invent one), in which the plaintiff will be allowed to recover for an act not done or caused by the defendant but by himself.

When the train approached Morgan's Corner some one (probably the conductor) announced it.    Much stress was laid on this fact.  The Court said, in substance, that to make such an announcement before the train actually stopped, was a want of diligence whereby the plaintiff was thrown into a position of danger; and though he was warned not to jump, yet, having done so, he could make the company pay him for the hurt he received.    We think this totally wrong.    It is not carelessness in a conductor to notify passengers of their approach to the station at which they mean to get off, so that they may prepare to leave with as little delay as possible when the train stops.    And we cannot see why such a notice should put any man of common discretion in peril.    It is scarcely possible that the plaintiff could have understood the mere announcement of Morgan's Corner as an order that he should leap without waiting for a halt.  If he did make that absurd mistake, it was amply corrected by the earnest warnings which he afterwards received.

The remark of the Court that life and limb should not be weighed against time, is most true; and the plaintiff should have thought

[Railroad Company *v.* Aspell.]

of it when he set his own life on the hazard of such a leap for the sake of getting to the ground a few seconds earlier.   Locomotives are not the only things that may go off too fast; and railroad accidents are not always produced by the misconduct of agents.   A large proportion of them is caused by the recklessness of passengers.   This is a great evil, which we would not willingly encourage by allowing a premium on it to be extorted from companies.   However bad the behavior of those companies may sometimes be, it would not be corrected by making them pay for faults not their own.

The Court should have instructed the jury that the evidence taken altogether (or even excluding that for the defence), left the plaintiff without the shade of a case.

Judgment reversed and *venire facias de novo* awarded.