## ATLANTIC COAST LINE RAILROAD COMPANY *v.* DAVIS, ADMINISTRATOR.

No. 70. Argued November 23, 1928.—Decided February 18, 1929.

Messrs. *Thomas W. Davis* and *Henry E. Davis* for petitioner.

*Mr. Wm. C. Wolfe,* with whom *Messrs. Adam H. Moss* and *Thomas H. Peeples* were on the brief, for respondent.

Mr. JUSTICE SANFORD delivered the opinion of the Court.

Richards, an employee of the Railroad Company, suffered personal injuries that resulted in his death. Davis, the administrator of his estate, brought this action against the Railroad Company in a common pleas court of South Carolina. The declaration alleged that the injury was caused by the negligence of the Railroad Company in failing to provide Richards a safe place in which to work. At the conclusion of the evidence the Railroad Company moved for a directed verdict. This was denied. The jury found for the administrator; and the judgment entered on the verdict was affirmed by the Supreme Court of the State.

It is unquestioned that the case is controlled by the Federal Employers' Liability Act,[1] under which it was prosecuted. Hence, if it appears from the record that under the applicable principles of law as interpreted by the Federal courts, the evidence was not sufficient in kind or amount to warrant a finding that the negligence of the Railroad Company was the cause of the death, the judgment must be reversed. *Gulf, etc. R. R.* v. *Wells,* 275 U. S. 455, 457; and cases cited.

Richards was injured while on a steam shovel standing by the side of the railroad track that was being operated

---

[1] 35 Stat. 65, c. 149.

by an independent contractor employed by the Railroad Company to fill in trestles on its lines. With this steam shovel the contractor excavated dirt from the railroad right of way and loaded it upon a train of dump cars, which was hauled to the trestles, where the dirt was deposited. The contractor furnished and operated the steam shovel, and also furnished the train of cars. The Railroad Company furnished the locomotive and train crew " for the operation of the contractor's train while on the railroad tracks," and hauled the train of cars to and from the trestles.

Richards was employed by the Railroad Company as a member of the train crew. He was the flagman, and his duty was to put out flags and protect the train from collisions.

In excavating and loading the dirt the steam shovel was stationed at a convenient distance on the side of the railroad track. The accessible dirt was excavated and loaded on the train of cars standing on the track. As each car was loaded the train was moved to get the loaded car out of the way and bring the next car into position for loading. For this it was necessary to signal the engineer to move the train. This was sometimes done by the shovel operator by the use of a whistle, and sometimes by the contractor's crew of laborers who were used " to spot cars," that is, watch the loading and signal to the engineer. One of these laborers, called a " spotter," was used for this particular purpose. The evidence shows, however, that the cars were frequently spotted by members of the train crew. This appears to have been entirely voluntary on their part. The contractor had never requested that they be required to do this, and the conductor of the train, who was in sole charge of the crew, had never directed them to spot the cars. The conductor also sometimes voluntarily spotted cars, and he had seen other members of the crew thus engaged; but, understanding

that, like himself, they were doing this voluntarily, did not stop them from doing this work when they chose.

The main platform of the steam shovel was occupied by a " shovel house " covering the engine and boiler. By the side of this was a running board extending to the front corner post of the shovel house. In front of the shovel house was a crane, having a revolving boom about thirty feet long, to which a dipper stick and scoop was attached. This scooped up the dirt, and by a circular movement of the boom was brought into position for loading the dirt on the cars. When the shovel was stationed in the position occupied on the day of the accident, at a considerable distance from the track, this required a " full swing " of the boom. Between the shovel house and the crane there was an upright steel frame which prevented the boom from striking the shovel house. But attached to the side of the boom several feet from its base was an iron ladder, which would pass above the steel frame, and when the boom made a full swing the lower part of the ladder would come within four inches of the upper part of the corner post of the shovel house. In front of the running board and at the side of the steel frame the upper end of a " jack-arm," planted in the ground to steady the shovel, projected above the platform. This was not only so small as to afford an insecure footing, but it was so high and so located that if anyone standing on it did not move out of the way when the boom made a full swing he would necessarily be struck by the iron ladder and crushed against the corner post of the shovel house.

While it does not appear that any specific place had ever been assigned for the spotter, the uncontradicted evidence shows that there were at least four safe places in which he could stand without danger of being struck by the revolving boom: 1. On the running board by the side of the shovel house, this being the position usually taken; 2, on the top of a loaded car, this being the posi-

tion frequently taken; 3, inside of the shovel house, from which he could signal the engineer through an open window; and 4, on the ground, on the opposite side of the track from the shovel.

While a brakeman stated that he had sometimes stood on the " jack-bar " to spot cars when it was very hot—it being protected, from the sun at certain hours of the day—he added that when he had done this, realizing the danger, he had watched the boom " very, very carefully "; and it did not appear that he had ever stood there when the shovel was stationed in a position requiring the boom to make a full swing. Neither the conductor nor the contractor's manager had ever seen anyone standing on the jack-arm while spotting. And the shovel operator, who had once seen Richards on the jack-arm at a time when the shovel was not running, had told him that it was a dangerous place and " to never get caught there or he would get killed."

There was also evidence that if a railroad caboose had been attached to the end of the train a spotter could with safety have signalled the engineer from the windows of the cupola; but it appeared that he could not have efficiently spotted the cars from this position as the roof would have prevented him from seeing when they had been loaded.

On the day of the accident Richards, without any order from the conductor, voluntarily took the place of a brakeman who had been engaged in spotting the cars. He first mounted on the running board by the side of the shovel house in the position which the brakeman had occupied. Shortly thereafter, for some unexplained reason—possibly to get away from the heat of the sun—he left this position of safety and got on the jack-arm; and while standing there was struck by the iron ladder when the boom swung into position for loading a car, and received the injuries which resulted in his death. That this was the manner

of his death is demonstrated by the undisputed physical facts, and is not controverted.

We pass without determination the question whether the case was properly submitted to the jury to determine whether Richards at the time of the accident was engaged within the scope of his employment by the Railroad Company or was merely aiding the contractor as a volunteer. However this may be it is clear that, even if the Railroad Company then owed him any duty in this respect, there was no substantial evidence that there was any negligence upon its part in failing to furnish a safe place in which to work. The evidence is undisputed that there were several places in which he could have stood in spotting cars, all of which were reasonably safe and well adapted to the performance of the work, and in which he could not have been struck by the swinging boom. And the inevitable conclusion from all the evidence is that he voluntarily abandoned the safe position on the running board which he at first assumed and placed himself in a position of extreme danger on the "jack-arm," a place not furnished for the performance of this work and ill adapted thereto, and one of obvious danger in which he would inevitably be struck if the boom made a full swing unless he moved out of its path; and thereby through his own negligence, as the sole and direct cause of the accident, brought on his own death. Under these circumstances there is plainly no ground upon which the liability of the Railroad Company may be predicated. Compare *Gt. Northern Ry.* v. *Wiles,* 240 U. S. 444, 448; *Southern Ry.* v. *Gray,* 241 U. S. 333, 339; *Frese* v. *C., B. & Q. R. R.,* 263 U. S. 1, 3; *Davis* v. *Kennedy,* 266 U. S. 147, 148.

The contention that Richards' death was caused by the negligence of the Railroad Company in any respect in which it owed a duty to him is without any substantial support; and the jury should have been instructed to find for the Railroad Company. The judgment is reversed

40

and the cause remanded to the Supreme Court of South Carolina for further proceedings not inconsistent with this opinion.

*Reversed.*