## ATLANTIC COAST LINE RAILROAD COMPANY v. DRIGGERS.

CERTIORARI TO THE SUPREME COURT OF SOUTH CAROLINA.

No. 225. Argued January 18, 1929. Reargued April 9, 10, 1929.— Decided June 3, 1929.

*Mr. Thomas W. Davis,* with whom *Messrs. Simeon Hyde, R. McC. Figg, Jr.,* and *V. E. Phelps* were on the brief, for petitioner.

*Mr. Louis M. Shimel,* with whom *Messrs. J. D. E. Meyer* and *Sidney Rittenberg* were on the brief, for respondent.

MR. JUSTICE SANFORD delivered the opinion of the Court.

William A. Driggers, an employee of the Railroad Company, suffered personal injuries that resulted in his death. The administratrix of his estate brought this action against the Railroad Company in a common pleas court of South Carolina. At the conclusion of the evidence the Railroad Company moved for a directed verdict. This was denied. The jury found for the administratrix; and the judgment entered on the verdict was affirmed by the Supreme Court of the State.

It is unquestioned that the case is controlled by the Federal Employers Liability Act, under which it was prosecuted. Therefore, if it appears from the record that under the applicable principles of law as interpreted by the federal courts, the evidence was not sufficient in kind or amount to warrant a finding that the negligence of the Railroad Company was the cause of the death, the judgment must be reversed. *Atlantic Coast Line* v. *Davis,* 279 U. S. 34, 35; and cases cited.

Driggers had been employed by the Railroad Company for about five years, and for about six months had been a member of a switching crew. He was injured by stepping off the footboard of the switch engine while it was in motion and striking the engine of a local passenger train that was passing along an adjacent track.

The scene of the accident was about three miles north of Charleston, within the yard limits, at a point where the Railroad Company has parallel double tracks, running north and south; the eastern being the northbound main line; and the western, the southbound main line. These lines are about 12 feet apart measured from center to center, with a clearance of 7 feet 8½ inches from rail to rail. The tracks are practically straight, and for a distance of about 2,000 feet to the north there is no obstruction to the view along the tracks. Leading from the northbound main line there is a spur track—called the Etiwan Lead—running in a northeasterly course, on a northerly curve, to a coal yard. The switch for this spur track is controlled by a lever on the east side of the main line. In leaving the main line and proceeding along the spur track for about three car lengths, that is about 120 feet, the view to the north along the main line tracks was unobstructed; but beyond this distance there was shrubbery and a billboard on the north side of the track which obstructed the view to the north. This spur track was used by the switching crew every day, sometimes more than once. On the day of the accident—which was clear and bright—the switch engine left Charleston and went up the northbound main line for the purpose of transferring some cars on the Etiwan Lead to a connection point with the Southern Railway that was some distance to the north. To do this it was necessary to go on the spur track, cut out a car, return to the northbound main line with the cars to be transferred, and shove them up that line to the connection point where the cars were to be delivered.

On approaching the Etiwan Lead the conductor of the switching crew, after telling Driggers—who was the brakeman—to cut out a car, got down and opened the switch for the spur track. He then left the switch open,[1] and walked across the north and south lines and adjoining double tracks of the Southern Railway, to a point about 15 or 20 feet west of the Southern Railway tracks, to look for a train.

Meanwhile the switch engine went on the spur track, and after doing the necessary switching work, returned with the attached cars to the main line, moving at about six miles an hour, upgrade. The engine was in front—facing the switch. Driggers was standing on the righthand footboard in front of the engine. In going over the last portion of the spur track, where the vision to the north was unobstructed, he was facing nearly south, and could not see to the northward without looking back. He was expecting that after the switching train had gone on the northbound line the cars would be shoved back up that line to the connection point. But as the switch had been left open it would not have to be turned until the cars had passed down the main line beyond it, when it would have to be closed so that the train might pass back up the line.

Just as the switch engine reached the northbound main line, proceeding southwardly down that line, the conductor, who had heard the whistle of a passenger train on the southbound main line and saw the approaching train, tried to call the attention of Driggers—who was looking at him at the time—to the train, pointed to it and told him to stay on the footboard. The exhaust on the switch engine prevented him from hearing what the conductor said. The signal which the conductor gave to show him

---

[1] This automatically threw a red signal on the line at a point to the south.

that the passenger train was coming was the same signal which would tell him that the switching train was to back up the northbound main line. The only answer that Driggers gave was a nod of the head, indicating that he understood that the switching train was to be shoved back up that line. Thereupon, despite the noise from the exhaust of the switch engine, without looking back to see whether any train was approaching, and without having received any signal to dismount from the switch engine for any purpose whatever, and while the switch engine was in motion entering upon the southbound line, Driggers stepped off the right end of the footboard in the space between the northbound and southbound lines and swung or was thrown into the pilot sill of the engine of the passenger train on the southbound line, which was passing at that moment, and was instantly crushed and killed.

The undisputed evidence shows that Driggers had no duty which required him to dismount from the switch engine at that time, but was supposed to remain on the engine, although it was optional for him to get off and throw the switch.

On the other hand, the undisputed evidence shows that the passenger train, which was a few minutes behind time, and was running from 35 to at least 50 miles an hour, had a clear and unobstructed right of way on the southbound line. The engineer was on the lookout ahead, and had blown signals at a point about 2,000 feet to the north, and again before reaching the scene of the accident; and the automatic bell on the engine, which he had set in motion, was ringing continuously up to the time of the accident. There was no obstruction whatever on the line ahead. Although the engineer saw the switch engine about to enter in a southerly direction on the northbound main line, there was nothing to indicate that any member of its crew would attempt to dismount between the two lines; and Driggers suddenly struck the side of the engine behind

the pilot, in a position where he was not and could not have been seen by the engineer, and when it was impossible to stop the train.

Under these circumstances, it is clear that Driggers, by his own negligence, as the sole and direct cause of the accident, brought on his own death, and that there is no ground upon which the liability of the Railroad Company may be predicated. Compare *Atlantic Coast Line* v. *Davis, supra,* p. 39; and cases cited.

The rate of speed at which the passenger train was running was, plainly, not a proximate cause of the injury, as the engine of that train did not run into Driggers, but he, as the result of his own action, was thrown against the side of the engine as it was passing. See *Patterson* v. *Director General,* 115 S. C. 390, 396.

The contention that his death was caused by the negligence of the Railroad Company in any respect in which it owed a duty to him is without any substantial support; and the jury should have been instructed to find for the Railroad Company.

The judgment is reversed, and the cause remanded to the Supreme Court of South Carolina for further proceedings not inconsistent with this opinion.

*Reversed.*