# International-Great Northern Railroad Company v. James O. Lowry.

No. 7203. Decided November 30, 1938.
Rehearing overruled January 18, 1939.
(121 S. W., 2d Series, 585.)

*Sewell, Taylor, Morris & Garwood, Andrews, Kelley, Kurth & Campbell* and *J. A. Bulloch,* all of Houston, for plaintiff in error.

The cars which plaintiff was ordered to repair were being used to transport a cargo in interstate commerce, even though such journey had been temporarily interrupted for the purpose of making repairs. Southern Pac. Ter. Co. v. Interstate Commerce Com., 219 U. S. 498, 31 Sup. Ct. 279; 55 L. Ed. 310; Texas & N. O. Ry. Co. v. Sabine Tram. Co., 227 U. S. 111; 33 Sup. Ct. 229, 57 L. Ed. 442.

The act of the conductor in failing to have the train stop at the station where said cars were on a siding was not a breach of a legal duty which would afford a basis of recovery by the plaintiff herein. Neither was said failure to stop a ground of negligence which would form a basis of recovery. Neither was it the direct nor proximate cause of plaintiff's injury, but at best was only a remote cause. Houston & T. C. Ry. Co. v. Leslie, 57 Texas 83; Seaboard Airline Ry Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062; Bobango v. Erie R. R. Co., 57 Fed. (2d) 667; Texas & Pac. Ry. Co. v. Bigham, 90 Texas 223, 38 S. W. 162.

*Lasseter, Simpson, Spruiell & Lowry,* of Tyler, for defendant in error.

The railroad, its agents, servants and employees owed plaintiff the duty of stopping the train at the station and their failure to discharge this duty to him constituted actionable

negligence and such negligence was the proximate cause of plaintiff's injury. Chesapeake & O. Ry. Co. v. De Atley, 241 U. S. 310, 60 L. Ed. 1016, 36 Sup. Ct. 564; Gila Valley Ry Co. v. Hall, 232 U. S. 94, 58 L. Ed. 521, 34 Sup. Ct. 229; Southern Pac. Ry. Co. v. McKinley, 80 S. W. (2d) 1009, certiorari denied by U. S. Supreme Court, 296 U. S. 631.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Defendant in error, employed by plaintiff in error as a car repairer, was injured when he alighted from a moving freight train operated by plaintiff in error. The Court of Civil Appeals affirmed a judgment for $20,000.00 in favor of defendant in error (98 S. W. (2d) 383), and this court in granting the application for writ of error expressed the tentative opinion that the act of defendant in error in jumping from the train was the sole proximate cause of his injury.

Defendant in error, 57 years of age in 1935, suffered the injury on account of which he sues on May 2, 1931. He began to work as a car repairer in 1906 and, with some interruptions, worked at such employment for several different railroad companies until the time of his injury, his employment with plaintiff in error beginning in the early part of 1931. He was never a switchman or brakeman. His work was done in the yards, where he saw trains switched and moved about. Frequently it was necessary for him to go on trains to repair cars somewhere along the line. He was not experienced in boarding or alighting from moving trains, although "once in a while" as a matter of convenience in going about the yard he had gotten on and off moving switch engines.

On the morning of May 2, 1931, defendant in error, then stationed at Troup on plaintiff in error's main line of railroad, received two messages ordering him to go to Gould, a station on the same line about six or seven miles south of Troup. These messages were sent from Palestine, one addressed "Car Men" and the other "Car Repairer." The first of the messages was as follows: "SHPX 10188 at Gould with hold in "B" end. Rush to Gould on 1st thing available and stop leak." The second message gave the numbers of several cars in bad order that had been set out on the preceding day at Gould, described in a general way the repairs needed and directed the car repairer at Troup to arrange to make them. As to car SHPX 10188 this message stated: "Needs plug on B end close to top of tank account oil leaking out."

We adopt the following from the brief of defendant in

error as a correct statement of what occurred after the receipt of the message:

"In response to these messages defendant in error together with his helper boarded the caboose of a freight train then at Troup and proceeded to Gould, six or seven miles south of Troup, where the bad-order cars were set out. Before boarding the caboose, defendant in error requested the station agent of plaintiff in error at Troup to arrange with the conductor of the freight train to stop the train at Gould so he could alight therefrom and repair the bad-order cars.

"The agent did inform the conductor of the presence of defendant in error and his helper on the caboose of the freight train and requested the conductor to inform the engineer of such fact. This the conductor did not do, although he rode on the engine with the engineer from Troup to Gould. On approaching the station at Gould, and a short distance before reaching same, the engine ran over two torpedoes, which caused the engineer to slow the speed of his train to about twenty miles an hour. When he rounded the curve where he observed the track was clear, he began to increase his speed. By the time the train reached the station of Gould, it was proceeding at a speed of about thirty-five miles per hour, and continued on through without stopping or reducing its rate of speed. When the caboose was at or near the dirt road crossing at Gould, defendant in error and his helper observed a tank car on a siding leaking oil, and believing that the train was proceeding at the rate of speed of twelve to fifteen miles an hour, defendant in error determined to alight therefrom, and so informed his helper and requested him to get off said train. They did alight from said moving train and defendant in error was injured."

The facts found by the jury in answer to special issues were in substance as follows: The failure of the conductor to have the train stopped was negligence which was a proximate cause of defendant in error's injury. Oil that was leaking in perceptible quantities from the tank car on the track at Gould near the company's main line created an unusual hazard and danger to the railroad company's property. Defendant in error believed that the leaking oil created an unusual danger and hazard and, laboring under such belief, impulsively and without time for reflection as to the danger to himself and not knowing that he would endanger his safety, alighted from the moving train in order to repair the leak in the car. An ordinarily careful and prudent person, under all the facts and

circumstances at the time, would have alighted from the train. The act of defendant in error in jumping from the train was negligence and such negligence proximately caused or contributed to cause his injury, but it was not the sole proximate cause. Defendant in error was damaged in the sum of $30,-000.00, but such damages should be diminished by $10,000.00 because of defendant in error's contributory negligence.

■ The case is controlled by the Federal Employers' Liability Act (Sections 51-59, Title 45, U. S. C. A.), both the railroad company and defendant in error being engaged in interstate commerce at the time of the injury. The oil in the tank car that defendant in error was undertaking to repair was in course of transit from Friars, Texas, to Texas City, Texas, there to be exported by coastwise steamer to Philadelphia, the car having been set out at Gould for temporary repairs, Carson Petroleum Co. v. Vial, 279 U. S. 95, 49 Sup. Ct. 292, 73 L. Ed. 626; Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup Ct. 158, 49 L. Ed. 363; Toledo St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 Sup. Ct. 215, 72 L. Ed. 513; Harlan v. Wabash Ry. Co., 335 Mo. 414, 73 S. W. (2d) 749, 756.

■ While by express provision of Section 53 of the Act contributory negligence on the part of the employee does not bar a recovery, it is also true that the carrier is made liable in damages (aside from injury resulting from defective appliances etc.) only for such injury to the employee as results in whole or in part from the negligence of an officer, agent or employee of the carrier. It is settled that the carrier is not liable when negligence of the employee himself is the sole and direct cause of his injury. Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 Sup. Ct. 406, 60 L. Ed. 732; Frese v. Chicago B. & Q. R. Co., 263 U. S. 1, 44 Sup. Ct. 1, 68 L. Ed. 131; Atlantic Coast Line Co. v. Davis, 279 U. S. 34, 49 Sup. Ct. 210, 73 L. Ed. 601; Atlantic Coast Line Co. v. Driggers, 279 U. S. 787, 49 Sup. Ct. 490, 73 L. Ed. 957; Bobango v. Erie R. Co. (U. S. C. C. A.) 57 Fed. 667.

The statute makes the carrier liable for the result of its own negligent conduct, not for the result of the negligent conduct of the injured employee. Its terms, which fix liability, and the above cited cases, which were suits brought under it, are declaratory of the simple and fundamental principle expressed in the often quoted words from the opinion in Pennsylvania Ry. Co. v. Aspell, 23 Pa. St. 147, 62 Am. Dec. 323: "There is no form of action known to the law (and the wit of man cannot invent one) in which plaintiff will be allowed to recover for

an act not done or caused by the defendant, but by himself." When, therefore, the independent act of the plaintiff employee is itself the proximate cause of the injury, superseding the original negligence of the defendant carrier, the plaintiff is not entitled to recover. In such case, as said in Great Northern Ry. Co. v. Wiles (supra), "There is no justification for a comparison of negligences or the apportioning of their effect." In other words, the negligence of the employee is in such case the causal negligence rather than merely contributory negligence.

■ It is of course apparent that both the negligence of the conductor in failing to cause the train to stop and the negligence of defendant in error in alighting from the moving train were factors in bringing about the injury. The orderly method of determining the question whether one or the other of these is to be regarded as the causal negligence or the sole proximate cause seems to be to consider first the negligence of the conductor. His failure to cause the train to stop after being advised by the station agent of the presence and destination of defendant in error and his helper was the breach of a duty owed by plaintiff in error to defendant in error. Did that negligence proximately cause defendant in error's injury? The accepted test in this State for determining such question is whether the injury, or a similar injury, might reasonably have been anticipated as the natural and probable result of the negligent act. Texas & Pacific Ry. Co. v. Bigham, 90 Texas 223, 38 S. W. 162; Gulf, C. & S. F. Ry. Co. v. Bennett, 110 Texas 262, 219 S. W. 197; San Antonio & A. P. Ry. Co. v. Behne, (Com. App.) 231 S. W. 354; City of Dallas v. Maxwell, (Com. App.) 248 S. W. 667, 27 A. L. R. 927; Gulf C. & S. F. Ry. Co. v. Ballew, (Com. App.) 66 S. W. (2d) 659; Southwestern Bell Telephone Co. v. Hardy, (Com. App.) 117 S. W. (2d) 418.

Criticism has been directed to the use of this test for determining proximate cause and other tests suggested as more logical, simpler or easier of administration. Rationale of Proximate Cause, by Leon Green, pp. 132-141, 177-185; Negligence, Duty and Causation in Texas, by W. Page Keeton, 16 Texas Law Review, pp. 1-7, 11-12; Restatement of the Law of Torts, Vol. 2, Secs. 431-435. However, it is the test generally used and approved in the decisions, including those of the Supreme Court of the United States and of the courts of many, if not most of the states. Milwaukee & St. Paul Ry Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Atchison T. & S. F. Ry. Co. v. Calhoun, 213 U. S. 1, 29 Sup. Ct. 321, 53 L. Ed. 671; Bobango v. Erie R. Co. (U. S. C. C. A.) 57 Fed. (2d) 667; 22 R. C. L.

pp. 119-122, Sec. 8. This being true, we do not undertake to defend the use of the rule of foreseeableness as the test in deciding the question of proximate cause or causation, further than to say that, although it may appear to be illogical to employ a rule by which the question of negligence is determined as a test for deciding proximate cause, the practical value of such test has been demonstrated in its long continued use and by the reasonableness and fairness of the results attained from its application in many decisions.

■ In our opinion it clearly appears from the facts in evidence that the injury suffered by defendant in error was not the natural and probable consequence of plaintiff in error's negligence and that it was not an injury that might reasonably have been anticipated. Inconvenience to defendant in error and the loss of time on account of being carried beyond his destination, instead of physical injury, would have been the natural and probable consequences of the failure of the conductor to cause the train to stop. Defendant in error's jumping from the train moving at thirty-five miles an hour was not reasonably to have been anticipated. He was not required or expected in the performance of his duties to board or alight from trains in motion. A person of ordinary prudence under the same circumstances would have remained on the train and returned to Gould on another train. It was shown without contradiction that there were heavy movements of oil and many freight trains passing over the railroad in that vicinity.

While it is true that one of the messages sent to defendant in error directed him to rush to Gould on "the first thing available" to stop the leak in the car, there is no evidence of the existence of a great emergency, of imminent serious hazard or of occasion for precipitate action. The message was sent at 10:15 A. M. The leaking car had been set out on the day before. Defendant in error testified that as he approached the station at Gould he saw oil leaking out of the tank car and that "there was a big puddle of oil all on the ground and oil running out of the tank." The helper, Pope, whose testimony by deposition was offered in evidence by defendant in error, testified that he saw the oil leaking from the car, which appeared to have been side-swiped, that the oil was dripping and splattering on the running board of the side of the car next to the main track, that he judged it was probably leaking a gallon every thirty minutes, and that he thought there was about a barrel of oil on the ground. This is the extent of the evidence offered to prove the existence of danger or hazard to to property of the railroad company. In our opinion it does

not tend to prove such imminent danger or hazard as would cause a reasonably prudent person to jump from a train traveling at the rate of thirty-five miles per hour (or even twelve or fifteen miles an hour, the rate at which defendant in error believed the train was moving) in order to stop the leak. 22 R. C. L., pp. 146-147, Sec. 30.

Defendant in error was not placed in a position of peril, either actual or apparent, by the negligence of plaintiff in error, but was in a safe position on the train until be elected to jump. His act that caused his injury was not the instinctive result of fear or fright, as in Beck v. Browning, 129 Texas 7, 101 S. W. (2d) 545. There is no evidence that he jumped impulsively because of apprehension of danger to plaintiff in error's property. He testified that he saw oil leaking from the car on the ground, that he "figured the train was going about twelve or fifteen miles an hour," that he tried to get off and was injured. The testimony of the helper is as follows: "After we saw the train was not going to stop he (defendant in error) asked me what we were going to do about it. I said 'I am goin to ride on through' and I said 'What are you going to do about it?' and he said 'We have to fix that tank car." I said 'We can't get off with the train running, and he said 'Yes, but we must fix the tank.' He said 'We must get off of it.' I asked him how and he said 'we will jump off,' and he said for me to jump. I kicked off the tools and jumped. I did not see Mr. Lowry get off the train. I do not know whether he jumped first or whether I did."

It is apparent that defendant in error was moved to alight from the train by a desire to perform promptly the duty to repair the car and not because of fear of imminent danger to plaintiff in error's property; and that, instead of acting impulsively, he discussed the situation with his helper and chose his course of conduct voluntarily and in accordance with his own judgment.

That defendant in error's act in jumping from the train was not reasonably foreseeable is made more certain by the fact, established by the evidence above mentioned, that his injury was the result of his own independent and voluntary act for which there was no necessity. As said by Chief Justice Gaines in Texas & Pacific Railway Co. v. Bigham, supra, "The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen." The facts from the primary fault to the injury do not consti-

tute a continuous succession of events so linked together as to become a natural whole. The chain was broken when the independent act of the defendant in error, not within the reasonable contemplation of plaintiff in error, intervened to bring about the injury. Under such state of facts the original or primary wrong is regarded a condition or a remote cause and the intervening act, the proximate cause or, as it is sometimes designated for want of more accurate term, the sole cause. Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Seale v. Gulf C. & S. Ry. Co., 65 Texas 274, 57 Am. Rep. 602; Texas & Pacific Ry. Co. v. Bigham, 90 Texas 223, 38 S. W. 162; Gulf C. & S. F. Ry. Co. v. Ballew, (Com. App.) 66 S. W. (2d) 659; 22 R. C. L. pp. 132-134, Sec. 18, p. 142, Sec. 26; Restatement of the Law of Torts, Vol. 2, Sec. 442.

Defendant in error invokes the rule announced in Section 443, Volume 2, of the Restatement of the Law of Torts, and followed in Anderson v. Baltimore & O. R. Co. (U. S. C. C. A.) 89 Fed. (2d) 629, that an intervening act which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause; but no different conclusion is reached by the application of this rule, for defendant in error's act in jumping from the moving train was a highly extraordinary, rather than a normal, response to the situation.

It is the order of the Court that the judgments of the district court and the Court of Civil Appeals be reversed and the cause remanded to the district court.

Opinion adopted by the Supreme Court, November 30, 1938.

Rehearing overruled January 18, 1939.