————o————

COGSWELL v. CHICAGO & E. I. R. CO.

No. 8717.

Circuit Court of Appeals, Seventh Circuit.

Dec. 18, 1945.

Rehearing Denied Feb. 9, 1946.

Edward W. Rawlins, James F. Wright, and T. N. Cook, all of Chicago, Ill. (Fay Warren Johnson, of Chicago, Ill., of counsel), for appellant.

Royal W. Irwin, of Chicago, Ill., for appellee.

Before · EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

This action sought damages for personal injuries to plaintiff, alleged to have been proximately caused by defendant's negligent acts in violation of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. By subsequent amendment to the complaint, it was also alleged that the injuries sustained were also proximately caused by defendant's negligence in violation of Rule 152 of the Rules and Orders of the Interstate Commerce Commission. The issues were joined by a general denial, and the further defense that the accident and the alleged injuries were proximately and solely caused by plaintiff's own negligence. At the conclusion of the evidence offered on behalf of plaintiff, defendant moved for a directed verdict, which was overruled, and at the conclusion of all the evidence a like motion was filed by defendant, and it was overruled. The jury returned a verdict for plaintiff on May 22, 1944, and on the same day judgment was entered thereon for plaintiff. On May 31, 1944, defendant moved for judgment in its favor in accordance with its motion for directed verdict made at the close of all the evidence, and in the alternative for a new trial. This motion was overruled on July 1, 1944, and defendant appeals from the judgment entered on May 22, 1944.

The evidence discloses that at the time of the transaction here involved the defendant was a railroad corporation engaged in interstate commerce, and plaintiff was engaged by it as a head switchman and servant for hire, and it was his duty to bring out the engine, stay with it, to throw switches ahead of and behind it, and to pass signals from the conductor or hind man to the engineer. On the day of the injury, defendant was engaged in his work in Chicago Heights yards of the Company, with yard engine No. 3645. Tracks 3, 4 and 5 of those yards run in a northerly and southerly direction. The cross-over is at the north end of the track. Track 3 was straight, track 4 was seven or eight feet west of track 3, and track 5 was seven or eight feet west of track 4.

On the day of the injury the crew, with the engine and a cut of from 24 to 27 cars, were standing on track 5, with the engine attached to the south end of the cut and facing south. They were going to move on track 3 to north of the 26th street crossing and leave some cars, and then go back on track 3 and leave the remainder of the cars on track 3. The switches to 5 to 4 to 3 were open and lined up for movement of cars over those tracks.

Plaintiff had received from the hind brakeman on the north car a back-up signal which he relayed to the engineer, and then walked northwardly on the west side of the track until the engine overtook him, where he mounted the first step leading up to the gangway between the engine and its coal tender, and held to the grab irons. There are two steps on the tank just below its leg, which reach to within two feet of the ground, and extend to the deck of the gangway, the latter constituting a third step. There was a grab iron on each side of the gangway, one on the rounded corner of the tender, which is referred to as the leg of the tender; the other was attached to the cab of the engine. They were about five feet in length. It is a greater distance between the leg of the tank and the lower portion of the grab iron on the engine than it is from the tender to the closest part of the cab of the engine. The grab iron on the engine stands out about 45 degrees back from the cab, toward the steps, and its lower end is fastened to the end of a heavy brace, which runs underneath the floor of the cab of the engine. The leg also extends outwardly from the rounded corner of the tender, apparently at an angle of about 45 degrees, so that upon entering the gangway from the steps the least clearance is between the tank and the engine.

As plaintiff thus stood upon the first step, moving at two or three miles an hour, he was looking north for signals from the conductor and hind brakeman. When he was about three or four car lengths from the curves that went into track 3 he climbed up to the gangway and had his left foot on the second step and his right foot on the gangway of the tender. Plaintiff testified that as the tender went around the curve onto track 3 both cab and tender were swaying and rocking up and down as they hit low joints; as he got close to the curve he put his knee against the tender and his hip against the cab of the engine and held himself out, arm straight out, watching for signals back around that curve; and that as they got around the curve the swaying and rocking pinched his right knee and right hip between the cab

and tender. This occurred when the tender and engine were going over the switch at track 3, just starting to straighten out; but the tender was on the straight track and the engine was facing in a westerly direction, still on the curve. He further stated that as it went around that curve his legs seemed to spread, and every time the engine and tender rocked it pulled his legs out farther. He then shouted for the engine to stop and it did.

On cross-examination plaintiff said that his hip was on the cab of the engine, level with his knee, and his foot on the deck and sort of inward; that he had to hold himself inside. He said his knee was pointed toward the tank of the engine and he rode that way until the accident; that his knee was up toward the tank of the engine, and his hip toward the cab at the grab iron, with his thigh level as he rode along. He further said that the distance between the cab of the engine and tender on the straight track was not enough to permit him to ride with his thigh in between; that he would not say the distance between the tender and the engine was greater than the length of his thigh, that it was a tight squeeze for the distance, that he had space enough so that when he first got in, his leg was not squeezed but was resting against the round end of the water tender and his hip on the cab; that he had room enough to ride that way comfortably. He further stated that his thigh was about eighteen inches in length, and that when he was riding in that fashion he knew the distance between the tender and the cab, and continued to ride with his leg in that position. He further stated that the turnout between track 3 going into track 4 was not a good smooth turnout at that time; and that the ties and rails were not in good condition; that he had worked on the job the day before and had inspected the ties as he rode along there, and inspected the rails while riding on the engine, and that he inspected all the ties that way; that they watch the ground as they go along, and that he had inspected the turnout rails many a time. He further stated that the engine was on the turnout when the accident happened, that the rails of track 3 had nothing to do with the accident.

The complaint alleges that defendant's negligence directly caused plaintiff's injury in that it carelessly and negligently (a) kept, maintained and provided its tracks, rails, ties and roadbed in a rough and uneven condition, (b) failed to properly ballast and secure the ties under the rails, (c) furnished, provided and maintained ties underneath the rails which were loose, rotten and insecure, and (d) caused, permitted and allowed the locomotive and tender to jerk, sway and run unevenly as they passed over the tracks and rails. By former amendment he had added specification (e) which alleged defendant's negligent and careless construction, maintenance and use of the engine and tender in that the width of the gangway between the locomotive and tender when standing on a straight track was less than 16 inches in violation of Rule 152 of the Rules and Orders of the Interstate Commerce Commission, dated March 13, 1911, and as subsequently amended, prior to this injury.

At the close of plaintiff's case he withdrew his specifications of negligence (b) and (c), and we are concerned only with specifications lettered (a), (d) and (e).

With respect to specification (e) it is clear that there was no substantial evidence supporting it. Plaintiff was the only witness who gave testimony on the width of the gangway which in any manner supported the allegation. He evidently had not measured it and it is quite evident he was guessing. He merely said: "I had observed that particular locomotive and tender when it was standing on a straight track. I would say the width of the gangway between the engine cab and tender was 10 or 12 inches." All other witnesses who gave testimony on this subject had measured it the day of the injury or shortly thereafter and said the width of the gangway on a straight track was 17 inches on the engineer's side and 17½ inches on the other side. Some of these witnesses had frequently measured it before, while acting at the request of and as representatives of the Government in securing its regular reports on this precise matter, as is done with all railroads. In so doing they complied fully with the rules and regulations and manner of making such measurements as prescribed by the Government. This evidence was in no manner denied, either substantially or otherwise. No rule of the Commission limits the width of the gangway between the engine and the tender, when it is not on a straight track, and the reason is obvious, for the difference in the degree of curve of different tracks renders it impracticable to fix one rule for all tracks, and the Commission quite evi-

dently thought that it should be permissible for any locomotive and its tender, with a 16 inch clearance in its gangway, to accomplish any possible curve. The defendant did not violate Rule 152 of the Commission. See St. Louis & S. F. R. Co. v. Conarty, 238 U.S. 243, 35 S.Ct. 785, 59 L. Ed. 1290; Chicago, B. & Q. R. Co. v. Murray, 40 Wyo. 324, 277 P. 703.

The remaining questions are whether defendant maintained its tracks, rails, ties and roadbed in a rough and uneven condition, or that it caused, permitted and allowed the locomotive and tender, as they passed over the tracks and rails in question, to jerk, sway and run unevenly, and thereby proximately cause plaintiff's injury. There was some evidence of the rough and uneven condition of the tracks, rails, ties and bed which caused the locomotive and tender to sway and to rock up and down, but there is no evidence to indicate that these facts caused or could cause the tender and engine to come closer together than the curve in the tracks caused them to come. Of course, there was much contrary evidence as to these items with respect to the condition of the tracks, ties and roadbed, and it was not denied that yard tracks, such as these, are never kept to the same standard of perfection as the main track, yet we are only considering plaintiff's evidence as to these items in determining the question now before us.

He said he was riding in the engine with his hip against the cab and his knee against the tank, the distance between the tank and cab being slightly more than the length of his thigh, which he thought was 18 inches, and that the curve pinched his right knee and right hip, which was between the cab and tender. He said he rode in this position for four or five car lengths before coming to the curve going into track 3; that when the engine went around the curve, on the inner side it shortened the space between the engine and tender, although on a straight track that space was sufficient to permit him to ride in it with his thigh extended. He further stated that the rails in track 3 had nothing to do with the accident.

■ If defendant was negligent, as alleged, with respect to its running of the train or the condition of the train or the condition of the tracks, ties and bed, such negligence was not the proximate cause of the injury. See Atchison, Topeka & Santa Fe Railway Co. v. Toops, 281 U.S. 351, 50

S.Ct. 281, 74 L.Ed. 896; Atlantic Coast Line R. Co. v. Davis, 279 U.S. 34, 49 S.Ct. 210, 73 L.Ed. 601; Lang v. New York Central R. Co., 255 U.S. 455, 41 S.Ct. 381, 65 L.Ed. 729; Hogan v. New York Central R. Co., 2 Cir., 223 F. 890; Chicago, B. & Q. R. Co. v. Murray, supra.

■ Since there was no substantial evidence to support plaintiff's charge of negligence, it follows that defendant was entitled to the peremptory instruction sought at the close of plaintiff's evidence and again at the close of all the evidence, and renewed by its motion for judgment after verdict. Under the ruling in Brennan v. Baltimore & O. R. Co., 2 Cir., 115 F.2d 555, and Brunet v. S. S. Kresge Co., 7 Cir., 115 F.2d 713, it is here entitled to reversal of the judgment and remand of the cause with directions to dismiss the complaint on the merits, and it is so ordered.

MAJOR, Circuit Judge (dissenting).

Under the decision of this court, Eglsaer, Administratrix, etc., v. Scandrett et al., 7 Cir., 151 F.2d 562 (and the cases therein cited and discussed), I feel that this judgment should be affirmed. True, it is a weak case for the plaintiff but I believe there is evidence to go to the jury both on the questions of negligence and proximate cause. The plaintiff testified:

"As the locomotive and tender went around this curve onto track 3 the cab and coal tender were swaying and rocking a lot up and down and sideways, the tender one way and the cab the other, and then up and down as they hit these low joints.

"As we got around the curve I put my knee on the water tender and my hip on the cab of the engine and I held myself out, my arms straight out, and was watching for the signals back of it around that curve, and as we got around that curve, why, the swaying and rocking of it pinched my right knee and my right hip between the cab and coal tender."

In my opinion, the instant case, weak as it is for the plaintiff, is stronger than the case made by the plaintiff in the Eglsaer case. There, we held that the District Court erroneously directed a verdict in favor of the defendant. In the instant case the lower court is to be reversed for its refusal to direct a verdict. While I agreed to the decision in the Eglsaer case with reluctance, I think that consistency requires that I hold for the plaintiff in the instant

case. Especially is this so in view of my belief, as stated, that the facts of the instant case are more favorable to the plaintiff than they were in the other case.