SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY v.
H. P. ANKERSON.

Decided January 28, 1903.

**1.—Proximate Cause—Railroads—Personal Injury.**

Where the engineer of a freight train, in violation of the rules of the company, failed to signal on approaching a stopping place, but slowed up without being signaled so to do by the brakeman, thereby causing him to be thrown off his guard so that he did not discover a break in the train until too late to check the rear part in time to avoid a collision of the two parts, whereby he was injured, such failure of the engineer to signal was the proximate cause of the injury.

**2.—Personal Injury—Negligence—Charge.**

An expression in the charge, in an action for personal injury, which precluded plaintiff from a recovery if guilty of negligence which "contributed to his injury," would be understood by any jury to mean the same as negligence that "contributed to cause or produce the injury."

**3.—Same—Contributory Negligence—Evidence.**

See evidence given by plaintiff and contradictory in character under which it is held that the issue of contributory negligence on plaintiff's part was nevertheless for the jury.

**4.—Same—Contributory Negligence.**

Since men, under stress of circumstances creating a fear of death or serious bodily injury can not usually act with calmness and composed judgment, the party creating such circumstances can not be allowed to plead a lack of judgment on the part of the injured person to excuse the negligence which created the circumstances, and it is therefore no defense that it may turn out that if the party injured had done differently at the time, or had done nothing, he would have escaped injury.

Appeal from the District Court of Bexar. Tried below before Hon. J. L. Camp.

*Houston Bros.* and *R. J. Boyle,* for appellant.

*John Sehorn,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee instituted this suit to recover damages arising from personal injuries inflicted through the negligence of appellant. A trial by jury resulted in a verdict and judgment in appellee's favor for $9000.

Before full daylight on the morning of January 30, 1901, appellee was in the cupola of the caboose as rear brakeman on a freight train of appellant's that was leaving San Antonio. As the train approached Hot Sulphur Wells siding he discovered that there was a break in the train, that the front section was running slower than the rear section and that a collision was imminent. He stepped to the brake and applied it, but in about a second the collision occurred, and appellee was thrown down, and received serious and permanent injuries. The following rule promulgated by appellant was in force: "Engineers of freight trains, not working air over entire train, before making any

stop will wait until a signal is received from the caboose. Approaching a station, tank or other point, where a stop is made, engineers will give the usual signal, and if it is not answered by a stop signal from the caboose, you will call for signals, and under no circumstances stop until the signal is given, unless in case of danger. This bulletin is issued for the purpose of preventing, if possible, some of our broke-in-two collisions. Conductors will see that engineers are given the proper signals from the caboose."

There is evidence that justifies the conclusion that the engineer did not give any signals of his desire or intention to stop, and did not receive any stop signal from the conductor or brakeman, and his negligence in disobeying the foregoing rule was the direct and proximate cause of the accident. The break in the train was not discovered until the front section was about to stop at the siding, and appellee did all in his power to stop the rear section of the train and avert the accident. The train did not have air brakes over its entire length.

The following instruction to the jury is complained of in the first assignment of error: "If you believe from the evidence that on or about the 30th day of January, 1901, plaintiff was in the employ of the defendant as a brakeman on one of its freight trains, and that, as the train approached the station of Sulphur Wells, the train came apart and separated, and that the front portion of the train was stopped, and that the rear, or detached portion of the train, then collided with the front portion thereof, and as a result of such collision, if you find there was a collision, plaintiff was hurled or thrown against the window frame of the caboose, and thereby injured, as charged in his petition; and if you further find from the evidence that the defendant then had rules and customs in force governing the operation of freight trains, which provided that the engineer of the freight train, as he approached the station of Sulphur Wells, should signal by blowing the whistle of the engine, and if such signal was not answered by a stop signal from the caboose of the train, the engineer should then call for signals, and should not stop the train until the stop signal was given from the caboose, unless in case of danger; and if you believe from the evidence that the engineer of the train, upon which plaintiff was working failed to signal by blowing the whistle of the engine, as he approached the station of Hot Sulphur Wells, or if you believe from the evidence that said engineer, as he approached said station, did give the signal by blowing the whistle of the engine, but you also believe from the evidence that no stop signal was given from the caboose of the train, and that said engineer stopped the front portion of the train without receiving a stop signal from the caboose, and if you further believe from the evidence that said engineer was negligent in failing to give a signal by blowing the whistle of the engine as he approached said station of Sulphur Wells, if you find he did so fail, or if you believe from the evidence that the said engineer was negligent in stopping the front portion of the train without a stop signal from the caboose, if you find

that he did stop without such signal being given, and that the negligence of said engineer, if any, was the direct cause of the collision, if you find there was a collision, and of plaintiff's injury, if any, and that plaintiff was not guilty of contributory negligence and did not assume the risk,—then in this event your verdict must be for the plaintiff."

The charge is complained of on the ground that the evidence did not show that the failure of the engineer to whistle for the station could in any way have caused the injury to appellee. The evidence showed that it was the duty of the rear brakeman on a freight train, the position held by appellee at the time of the accident, in case of a break in the train to give a "go-ahead" signal, and to stop the detached part of the train so as to prevent a collision. He concluded that the parts of the train would collide if he tried to give the "break-in-two" signal, and laid hold of the brake to stop the detached cars. He was led into not giving the "break-in-two" signal because the engineer had not given the stop signal, and he concluded that he was not looking back because he had not given such signal, and consequently could not have been looking for a signal from the rear brakeman. If the failure of the engineer to give the signal at the proper place resulted in throwing the rear brakeman off his guard, thereby causing the break in the train not to be discovered until it was too late to stop the detached portion, or to increase the speed of the engine so as to get it out of the way, such failure to whistle was the cause of the accident, and it was not improper to submit that issue to the jury. According to the testimony of the rear brakeman, he was led to believe that no stop would be made, and by that reason he did not discover the break in the train until it was too late to avert the disaster. The reason given for the adoption of the rule requiring engineers to give a signal when approaching a stopping point, and to wait for a signal until a stop signal is given from the caboose, was to prevent "break-in-two" collisions. Under the terms of that rule it was the duty of the conductor to see to giving the answers to stop signals from the caboose. The evident purpose of the stop signal from the locomotive was to place the conductor and rear brakeman on their guard so that they would inspect the train and ascertain its condition, and, after that was done, signal an answer back to the engineer. The engineer failed to give the cautionary signal, and the consequence was that the break in the train was discovered too late to prevent the collision. Under the evidence the jury could have found that the failure to blow the whistle was one of the causes leading to the collision of the two parts of the train. The second assignment of error is hypercritical and without merit. The expression in the charge that precluded appellee from a recovery if guilty of negligence which "contributed to plaintiff's injury" would be understood by any jury to mean the same as negligence that "contributed to cause or produce the injury."

Appellee in one part of his testimony stated that if he had given the "break-in-two" signal and the engineer had gone ahead, there would

have been no collision, and it is the contention of the appellant that such evidence eliminated all question as to whether appellee's conduct contributed to the infliction of the injury upon himself. Whatever may have been the meaning of appellee in the evidence referred to, in another part of his testimony he stated, "If I had stopped to signal, the detached portion would probably have come into collision. Under the circumstances I did the best I knew to prevent the accident. * * * I did not give him the go-ahead or break-in-two signal. I knew he wouldn't see it. That is not the only reason I didn't give it; if I had stopped there to swing my arm the rear part would have met the front part before it did." It was for the jury to say under the facts whether appellee was guilty of contributory negligence.

The complaint as to excess is not sustained by the facts.

The judgment is affirmed.

<em>Affirmed.</em>

ON MOTION FOR REHEARING.

There was evidence to the effect that there was no stop signal given by the engineer, and that appellee upon discovering the break in the train to prevent a collision of the parts, was placed in a position where he had to choose between two methods, and that he chose that of putting on the brakes, rather than to lose time in endeavoring to signal the engineer. No stop signal having been given, and there being no reason why the engineer should be looking toward the rear of the train for a signal, appellee was justified in assuming that the engineer was looking forward and would not see a signal, and no time could be lost in making such signals. The negligence of the engineer had created an emergency, and placed upon appellee the responsibility of choosing one of two methods to prevent a collision. He chose the brakes.

If it be admitted that the engineer was looking back and would have received any signal given by appellee, and would by increasing the speed of the locomotive, have prevented the collision, that would not necessarily relieve appellant of the charge of negligence, for the emergency had been created by the negligence of appellant, and it is responsible for the existence of the circumstances that forced a choice of expedients on appellee to prevent the collision. As said by the Supreme Court in the case of Railway v. Neff, 87 Texas, 303: "The rule is sound and just which holds the party guilty of negligence responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of life or serious injury to his person, whether that person be prudent or imprudent, if in an effort to save his life he makes a choice of means from which injury results, and notwithstanding it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether." Men, under stress of circumstances which create a fear of death or serious bodily injury, can not usually act with calm-

ness and composed judgment, and the party creating such circumstances will not be allowed to plead lack of judgment on the part of the victim of the circumstances to excuse the negligent creation of them. The creator of such circumstances is the producer of the direct and proximate cause of the resulting injury.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.

James, Chief Justice, did not sit in this case.